[Civ. No. 3122. Third Appellate District.—March 10, 1927.]

VERA B. THOMSON, Respondent, v. PRESSON W. THOMSON, Appellant.

[1] FINDINGS — EVIDENCE — INFERENCES. — It is not sufficient to find merely probative facts unless ultimate facts are necessary inferences therefrom.

[2] ID.—INFERENCES TO BE DRAWN FROM PROBATIVE FACTS—TRIAL.— If different inferences may be drawn from probative facts found to exist, the inference to be drawn therefrom is a finding of fact to be made by the trial court.

[3] HUSBAND AND WIFE—PAYMENT OF FAMILY EXPENSES—SEPARATE FUNDS OF WIFE—REIMBURSEMENT.—Where a wife uses her separate funds in payment of family expenses, or voluntarily permits her husband to so use them, without any agreement or understanding as to repayment, she cannot require her husband to reimburse her.

[4] ID.—TRUSTS—AGENCY—EVIDENCE—FINDINGS.—In an action by a wife to establish a trust in certain properties held by her husband, and for an accounting, the evidence was sufficient to sustain a finding that certain moneys were turned over to the husband in trust, as agent for the wife, to be invested by him for her benefit, except such moneys as she voluntarily permitted him to use for family and other expenses.

[5] ID.—COMMINGLING OF PROPERTY—TRACEABLE FUNDS—COMMUNITY PROPERTY.—In such action, the fact that some of the trust moneys were by the husband commingled with his own and with community funds under his control, and that it was impossible to trace them into any specific community property, did not in any manner destroy the trust, which may be enforced by a personal judgment against the husband for the amount of money not so traceable.

1. See 24 Cal. Jur. 970; 26 R. C. L. 1092.

2. See 24 Cal. Jur. 975.

4. Trust resulting from payment of price by one spouse for conveyance to the other, note, 127 Am. St. Rep. 254. Resulting trust as arising where wife's money used by husband for purchase in own name, notes, Ann. Cas. 1915D, 643, 649; Ann. Cas. 1918E, 900. See, also, 13 Cal. Jur. 868; 13 R. C. L. 1391. Effect of investment by husband in his own name of wife's separate property to create trust in her favor, notes, 6 L. R. A. (N. S.) 381; 26 L. R. A. (N. S.) 161.

5. See 25 Cal. Jur. 254; 26 R. C. L. 1354.

[6] ID.—REPUDIATION OF TRUST—STATUTE OF LIMITATIONS.—In such action, where the husband had never repudiated the trust arising from the purchase of the properties with moneys turned over to him by the wife for such purpose, the wife's cause of action was not barred by the statute of limitations.

[7] ID.—INTEREST—PROFITS.—In such action, where the wife did not charge fraud or mismanagement of the moneys and properties entrusted to the husband, the rate of interest to be allowed the wife on moneys not traceable into specific property should have been in proportion to the profits actually realized, if the amount thereof could be shown.

(1) 38 Cyc., p. 1982, n. 61.    (3) 30 C. J., p. 680, n. 49.    (4) 39 Cyc., p. 160, n. 62.    (5) 39 Cyc., p. 534, n. 3.    (6) 37 C. J., p. 909, n. 54.

APPEAL from a judgment of the Superior Court of Los Angeles County. Elliot Craig, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

Minor Moore for Appellant.

Louis F. Laberere and Hill, Morgan & Bledsoe for Respondent.

FINCH, P. J.—The parties intermarried June 25, 1902, and ever since have been and now are husband and wife. The plaintiff was then of the age of twenty-two years and the defendant was thirty-one. At the time of the marriage the plaintiff owned securities of the value of $4,000. The defendant's property at that time, together with that acquired by him as his separate property shortly thereafter, was of the approximate value of $4,000. Beginning with the fall of 1907 the defendant attended law school for about two years, during which period his earnings were negligible in

6. Enforcement of resulting trust arising from husband's purchase in own name with wife's money as barred by statute of limitations, note, Ann. Cas. 1915D, 633. See, also, 16 Cal. Jur. 428, 480; 17 R. C. L. 710, 795. Effect of statute of limitations or the trust relationship arising from the taking of title in the husband's name to lands purchased with the money of the wife, note, 12 L. R. A. (N. S.) 493.

amount. During the other years since the marriage his average annual earnings, as a teacher prior to 1907 and as a lawyer since 1909, have been approximately $1,200. Subsequent to the marriage the plaintiff received as gifts from her mother and invested in real estate, which is clearly her separate property, the sum of $22,000. Neither this sum nor the property purchased therewith is in serious controversy. In addition to such gifts and in addition to the property owned by the plaintiff at the time of her marriage she has received gifts or legacies as follows: December 31, 1905, $4,000; December 31, 1905, $21,000; July 31, 1912, $250; December 10, 1913, $3,000; December 31, 1916, $2,100.

The complaint alleges that these various sums "were by the plaintiff turned over to the defendant as the agent and trustee of the plaintiff, for the purpose of investment by the defendant for the use and benefit of the plaintiff," and not as gifts to the defendant; that "the plaintiff permitted said defendant to make investments of said sums in his own name but always upon the distinct agreement . . . that said moneys and all increments and transmutations thereof, should be and remain the property of the plaintiff. . . . ; that said moneys and the increment thereof has been from time to time invested by the defendant for the use and benefit of the plaintiff herein, and that a large portion of said sum and said increment are now invested" in certain properties, describing them. The prayer is that the defendant be adjudged to hold such properties in trust for the plaintiff and that he be required to convey them to the plaintiff; that he be compelled to account to the plaintiff; that she be given judgment for the balance due her on such accounting, and that she have "such other and further relief as shall be meet in the premises."

The defendant's version of the transactions between the parties may be stated in the language of his opening brief, as follows: "At the time of their marriage each party had some property, and the property of both was placed in a general fund, and from time to time thereafter defendant's earnings, all profits from investments, all income, and all advancements by plaintiff, were placed in this general fund. Out of this general fund all expenses of the parties and of their family and of their properties and the purchase price of other properties as acquired, were paid. . . . The answer

alleges . . . that said properties are community property, except as to those held in joint tenancy, and as to those that they are and should be declared to be held in joint tenancy.''

The court found that the "plaintiff turned over to defendant for the purpose of investment by defendant various sums. . . . That said sums . . . were not intended to be, and were not, gifts to defendant. That plaintiff permitted said defendant to make investments of said sums in his own name for the community and mutual benefit of plaintiff and defendant, but without any distinct agreement between plaintiff and defendant as to equitable ownership of the properties acquired therewith, or of the increment and transmutations thereof. That said moneys, and the increment thereof, have been from time to time invested by defendant as the husband and business head of the family for the mutual benefit and use of defendant and plaintiff as husband and wife. . . . That the defendant and plaintiff from time to time discussed generally the various purchases of property before the purchasing thereof, and that plaintiff has at all times had a general knowledge of the investments made by defendant, but that defendant has never rendered to plaintiff a complete accounting for funds received by him from her. . . . That in the year 1902 defendant purchased as his separate property certain real estate in Galesburg, Illinois. . . . That after marriage of the parties hereto defendant sold said property for $2,500 net to him, and the said $2,500 went into what is hereinafter designated as 'general fund,' the same being a fund in the possession and under the control of defendant at all times during the married life of plaintiff and defendant, and into which general fund all receipts and proceeds from plaintiff's (apparently should be defendant's) earnings, sales of property, proceeds from properties and advancements by plaintiff to defendant, went, from time to time, and out of which fund defendant from time to time paid usual and necessary expenses, and personal expenses of plaintiff and defendant and their family, various business expenses of defendant, and the purchase price of various properties, both real and personal, as hereinafter more fully stated.'' Then follows a detailed statement of moneys paid into the general fund from various sources, including the moneys delivered by

plaintiff to defendant, and of payments made out of that fund in the purchase of properties, both real and personal. The twelfth finding enumerates the different sums of money delivered by the plaintiff to defendant and then continues as follows: "All of which sums in this paragraph mentioned . . . were, at the times herein respectively mentioned after the several items, delivered by plaintiff to defendant for such expenditures as he might from time to time see fit to make, including payment of family expenses. That said deliveries of funds were not, and were not intended by plaintiff as, a gift to defendant, but were for necessary use by him in connection with family matters as occasion required, and for investment for family benefit." The court further found, in response to an allegation of the answer, that it is not true that in 1902, or at any other time, "plaintiff and defendant agreed that in consideration of the promise of the defendant to contribute his time, energies and talent, or any of them, to making investments in a home, and in other property, or otherwise thereafter to be acquired . . . or in consideration of defendant investing his property and money, or either of them, then owned, and all properties or money thereafter to be received by him from any source, or otherwise, plaintiff promised to deliver to defendant her said securities of the value of $4,000 or any securities, for the purpose of aiding the defendant to purchase . . . properties as defendant might determine advantageous to both parties, . . . and for the purpose of paying any expenses necessarily to be incurred for the mutual benefit of both parties or otherwise, except as herein otherwise found. And the court further finds that no partnership agreement of any kind or nature was ever entered into between plaintiff and defendant concerning their property or properties, or the property of either party."

The decree adjudges that certain real property, standing of record in the names of the plaintiff and the defendant as joint tenants, is the separate property of the plaintiff, subject, however, to a charge of $3,000, with interest thereon, in favor of the community property of the parties. This is in accordance with the prayer of the answer and it does not appear that the appellant objects thereto. It is adjudged that a certain parcel of land and an automobile belong to the plaintiff as her separate property. The plaintiff's sep-

arate funds were used directly to pay for such property and there can be no question as to the correctness of the judgment relative thereto. Certain other property is adjudged to be the separate property of the defendant, and, of course, he makes no complaint in that respect. Of the other properties in controversy, it is adjudged that one parcel of land, standing in the names of the parties as joint tenants, is owned by them in joint tenancy, and that the remainder thereof is community property. This provision of the judgment is in accordance with the rights of the parties as contended for by the defendant. No reason appears for disturbing the judgment in so far as the terms thereof have been set forth. But the court further gave the plaintiff a personal judgment against the defendant for all sums of money delivered by her to him that were not traced into specific property which was purchased therewith, with interest at six per cent per annum on each of said sums from the date of the delivery thereof to the entry of the judgment, regardless of the purposes for which the money was used.

[1] Much of appellant's argument is based upon the contention that the court did not find that the plaintiff delivered the moneys in question to the defendant as her agent and in trust to be invested for her benefit. It must be conceded that the findings are uncertain in this respect. Probative facts are found from which it may be inferred that the moneys were so delivered. The rule is well settled, though sometimes lost sight of, that it is not sufficient to find merely the probative facts unless the ultimate facts are necessary inferences therefrom. (*Ellis* v. *Bonebreak*, 180 Cal. 168, 170 [179 Pac. 893]; *Potts* v. *Paxton*, 171 Cal. 493, 498 [153 Pac. 957]; *McCray* v. *Burr*, 125 Cal. 636, 638 [58 Pac. 203].) [2] If different inferences may be drawn from probative facts found to exist, the inference to be drawn therefrom is a finding of fact to be made by the trial court. (*Estate of Berry*, 195 Cal. 354, 361 [233 Pac. 330].) Whether or not the defendant was the agent and trustee of the plaintiff and whether or not the findings in that respect are sufficient need not be decided, because, conceding that the findings are sufficient to show such agency and trusteeship, the personal judgment against the defendant must be reversed on other grounds.

[3]   The court found that all sums of money in contro-
versy "were . . . delivered by plaintiff to defendant for
such expenditures as he might from time to time see fit to
make, including payment of family expenses." In respond-
ent's opening brief it is said: "The living expenses of the
parties during the two years defendant was in law school
were paid partially from the small income from the proper-
ties owned in Illinois at that time, and partially from the
sums turned over to defendant by plaintiff which were not
used by him in investments in properties." The judgment
requires the defendant to repay the full amount so turned
over to him, including the part thereof used for family
living expenses, with interest. Plaintiff testified that her
mother gave her $250 to defray the expenses of a trip and
that the money was so used; that at another time her mother
gave her $500 which was used in paying household expenses;
and that $605 out of a gift of $2,100 from her mother was
"used up in expenses." The judgment requires the defend-
ant to repay to plaintiff all of these sums, with interest
thereon from the time they were received. It seems clear
that when a wife uses her separate funds in payment of
family expenses or voluntarily permits her husband to so
use them, without any agreement or understanding as to
repayment, she cannot require her husband to reimburse
her. In *Third National Bank* v. *Guenther*, 123 N. Y. 568
[20 Am. St. Rep. 780, 25 N. E. 986], where a wife had
agreed to support the family and had permitted her hus-
band to pay the family expenses out of her funds, it is said
that so long as her agreement "remained executory it could
not be enforced against her, but . . . she had the right to
perform it, and having done so, she could not undo what had
been done by recalling what she had paid or requiring the
husband to reimburse her for the outlay."

[4]   The evidence is amply sufficient to sustain a finding
that the moneys in question were turned over to the de-
fendant in trust as the agent of the plaintiff, to be invested
by him for her benefit, except such moneys as she volun-
tarily permitted him to use and which he did in fact use
for family and other expenses. [5] The fact that some of
the trust moneys were by the defendant commingled with his
own and with community funds under his control and that
it is impossible to trace the same into any specific commu-

nity property does not in any manner destroy the trust, which may still be enforced by a personal judgment against the defendant for the amount of money not so traceable. [6] Under such circumstances, the defendant never having repudiated the trust until the present controversy arose, plaintiff's cause of action is not barred by the statute of limitations. (*England* v. *Winslow,* 196 Cal. 260, 271 [237 Pac. 542].) Plaintiff does not charge fraud or mismanagement of the moneys and properties entrusted to the defendant. [7] The rate of interest, therefore, to be allowed plaintiff on moneys not traceable into specific property should be in proportion to the profits actually realized, if the amount thereof can be shown. The case of *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360], furnishes a guide for the determination of the questions under discussion relating to the plaintiff's right to a personal judgment against the defendant. The requirement that the community property of the parties be applied toward the satisfaction of the personal judgment before resorting to defendant's separate property is favorable to him and gives him no cause for complaint.

Those parts of the judgment constituting paragraph XVII thereof, being a personal judgment in favor of plaintiff against the defendant for the recovery of $62,436.20, and interest thereon, is reversed, with direction to the trial court to retry the issues upon which such personal judgment is based. In all other respects the judgment is affirmed, the appellant to recover his costs of appeal.

Buck, J., *pro tem.,* and Plummer, J., concurred.