[Civ. No. 34520. Second Dist., Div. One. Feb. 11, 1970.]

CATHERINE M. CHIMENTI, Plaintiff and Respondent, v.
FRANK S. CHIMENTI, Defendant and Appellant.

**COUNSEL**

Lorenzo A. Pereyda, Jr., for Defendant and Appellant.

Henry H. Turick for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—Defendant husband appeals from an interlocutory decree of divorce, challenging only the division of property. He claims that the value of his wrecking yard business, which is his separate property, should not have been included in the division; he was not given proper credit for his contribution of separate funds toward the purchase of the residence awarded to plaintiff; and assuming his business to be community property, the court's valuation thereof is not supported by the evidence.

The parties were married on June 23, 1957. Plaintiff wife was granted a divorce and awarded custody of two minor children, child support ($200 per month), alimony ($100 per month for six years), the family residence in Alhambra ($30,000), furniture and furnishings and a 1964 Buick; to defendant the court awarded the real property on Workman Street in Los Angeles ($21,000), the business operated thereon ($14,000), certain personal items and a 1963 Ford and 1954 Mercury. Out of $19,414.34 in the bank the court ordered to be paid an encumbrance of $2,700 on the residence awarded to plaintiff, the 1968-69 taxes on both properties (amount unknown), $1,070.40 to plaintiff's counsel for fees and costs and $4,000 to defendant from which he is to pay his own counsel ($1,000); and divided the balance of the account equally between the parties.

The record shows that in 1951, six years before the marriage, defendant started a wrecking yard business and continued conduct of the same up to and including the time of trial. On May 27, 1957, approximately 30 days before marriage, defendant purchased the Alhambra residence for $25,000 making a down payment of $7,000 from his separate funds; there is no dispute concerning this and the trial judge found that defendant is entitled to a credit of $7,000 therefor. The parties stipulated that the residence is community property and now worth $30,000; it has an encumbrance of $2,700. On June 4, 1957, 19 days before marriage, defendant bought the real property on Workman on which his wrecking yard business is located. He made a down payment of $3,000 which he borrowed from his mother and later repaid. It was stipulated that the realty alone is community property and now worth $21,000; it is free of encumbrance.

In her complaint plaintiff alleged that defendant's business, Imperial Auto Wrecker, located on Workman, valued at $30,000 is community property; allegations as to value and character were denied in his answer and defendant alleged the same to be his separate property. While at the outset of the trial the parties stipulated that, with the exception of the $7,000 down payment, the Alhambra residence is community property valued at $30,000 and that the business property at 1720 Workman is community property

valued at $21,000, they did not stipulate that defendant's auto wrecking business located on Workman was community property or as to the value of the business; thus these two issues were before the trial court. Although formal findings were waived, the trial judge placed a combined value of $35,000 on defendant's business and the Workman realty upon which it is located; inasmuch as it was stipulated that the value of the realty alone is $21,000, implied is the finding that defendant's business is worth $14,000. The court further held that defendant's business is community property.

■ Appellant's claim that the business he began in 1951 is his separate property is not supported by the record. Having asserted the same in the court below, the burden was on defendant to establish its character as such; upon his failure to do so the presumption that it is community property is controlling. (*Patterson* v. *Patterson,* 242 Cal.App.2d 333, 340-341 [51 Cal.Rptr. 339].) Whether the presumption is overcome is a question of fact for the trial court. (*Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212-213 [259 P.2d 656]; *Pack* v. *Vartanian,* 232 Cal.App.2d 466, 470 [42 Cal.Rptr. 729].) The record shows that at the time of marriage the business assets included stock valued at $1,000 and $8,000 in radiator accumulations. Defendant testified that when these were sold he used $3,000 of the proceeds to pay his mother the money he had borrowed from her for the down payment on the Workman property and banked the balance in the names of the parties. (While it appears defendant could have been given credit for the $3,000, he stipulated that the property on Workman is community property.) There is nothing in the record to show how the balance was spent, although there is ample evidence to support the inference that it was commingled with community funds in a joint bank account and used for community expenses. Under the circumstances defendant is not entitled to reimbursement from community assets. (*See* v. *See,* 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776].) Defendant made no effort to trace the $6,000 or produce records to adequately establish the balance of community income and expenditures at the time any business asset thereafter was acquired with commingled funds (*See* v. *See,* 64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776]); and there is no proof that after marriage any investment in the business was the result of the use of defendant's separate funds. Income thereafter received from the business was, of course, community property and the record shows that it was from this income the modest purchases of equipment for the conduct of the business were made.

■ As to value, the trial court found the property on Workman and the business located thereon to be worth $35,000; at the outset of the trial the parties stipulated that the realty alone (which has a small building on it) has a present value of $21,000, thus the trial court in effect found the wrecking yard business to be worth $14,000. The evidence shows that on

December 22, 1966, the parties were offered $28,000 for the Workman property including the wrecking yard; they countered with an offer to sell for $35,000 but the deal fell through. Thereafter in April 1967 the parties signed an income listing agreement wherein they listed the selling price of $45,000 for the Workman property and wrecking yard; $10,000 was shown under net income. Plaintiff testified that defendant always told her he thought "it was worth that much [$35,000]," "that it could be sold for thirty-five," and that he was making "$10,000 and up" from the wrecking yard. However, defendant testified that at the time they made the $35,000 counteroffer there was building activity in the neighborhood; next door the purchasers were planning to build apartments which they subsequently built; he believed they wanted to build on the property and did not want to run the yard as they were not in the wrecking yard business; and when the $35,000 sale was not consummated the $45,000 value was set up in the listing agreement as a "come-on" to induce them to negotiate again at the $35,000 figure. Asked on cross-examination if $35,000 "would be a pretty good figure for the value of the business," defendant testified, "Mister, I wish they would give us $35,000 for it; they can have everything."

Defendant testified that the value of his wrecking yard as a "going business" was "around $4,000"—"probably be under $4,000"—consisting of $1,000 for goodwill and the balance for equipment which included a 1951 Ford truck (without engine) purchased for about $300, a 1951 Dodge truck purchased in 1963 for $700, a 1960 Ford truck purchased for about $1,000 and an A-frame purchased for $150; and that to make the $7,200 income from the business in 1967 (he doubts he can do this well in 1968) he worked from 7 o'clock in the morning to 7 o'clock at night on a 6-day week basis (two years ago he worked from 6 o'clock in the morning to 7 at night). The highest income shown in the 1963 through 1967 tax returns is $10,600. It appears from color photographs of the yard (Exh. B) that defendant's wrecking yard was not a "class" operation and he had little or no stock. Finally, defendant testified that in the last few years his business has been dropping off because of competition in the neighborhood within blocks of his business.

Appellant asserts that the trial court placed an exaggerated value on his business in order to make it appear that the division of property was equal. While we might not agree with the trial judge's evaluation of the Workman property and the business conducted thereon at the $35,000 figure, there is nevertheless evidence in the record to support it, the trial judge having elected to be "impressed by that $35,000 deal that almost went through, and by the fact that afterwards the husband was listing this property at $45,000, he says, in order to work out to $35,000." At the outset he

announced his intention to effect an equal division of the community property. At the conclusion of the trial plaintiff's counsel, summing up the evidence, placed a $10,000 valuation on the business which, combined with the realty valued at $21,000, amounted to a combined total of $31,000, and added, "we can even knock off another thousand" making $30,000 plaintiff's valuation of the business and the Workman property. Had the trial judge, who was bound by the stipulated $30,000 valuation of the Alhambra residence he wanted to award plaintiff, accepted plaintiff's figure of $30,000 for the Workman property. and business thereon, in order to reimburse defendant for the $7,000 he would have had to allow him $7,000 out of the bank account; thus he fixed the combined value of the business and the property on Workman at $35,000[1]—$14,000 for the wrecking yard business, the parties having stipulated the realty was worth $21,000. The more substantial evidence of value of the business, but rejected by the trial judge, appears to be found in the photographs of the wrecking yard and in defendant's testimony that "as a going business" it is worth around $4,000—$1,000 for goodwill and the balance for equipment which consisted of some old trucks—his $7,200 income from the business the year before (1967) resulted from a 12-hour day, 6 days a week, and because business is dropping off due to competition within blocks of his wrecking yard he doubts he can make this amount again. However, the trial judge was entitled to accept the $14,000 figure, for the credibility of the witnesses, resolution of factual conflicts, and the weight to be given the evidence are matters within the sole province of the trier of fact and not subject to review. (*Smith* v. *Bull,* 50 Cal.2d 294, 305 [325 P.2d 463].) Moreover, under the rules on appeal we are bound to view the evidence in a light most favorable to respondent and indulge all reasonable inferences in favor of the judgment. (*Grainger* v. *Antoyan,* 48 Cal.2d 805, 807 [313 P.2d 848].)

Thus, accepting the judge's determination that the business alone had a value of $14,000 making a total of $35,000 for both business and property, his calculation allowed reimbursement of the $7,000. ■ Appellant's claim that his separate property investment of $7,000 would be entitled to a 7/25 (or 28 percent) interest in the natural increase ($5,000) in value of the Alhambra residence (purchased for $25,000 and appraised

---

[1]The trial judge said, "In any event, if we put that [Alhambra residence] in at $30,000 and we put the business part at $35,000, in order to equalize, what I have to do is: The husband is to receive some additional money from the $19,000. He is entitled to the $7,000 that he put down. The only way I could do that would be by giving him $2,000, the first $2,000, and then dividing the remainder."

at $30,000) is made too late. At no time in the court below did defendant urge he was entitled to 28 percent of the increase.

The judgment is affirmed.

Thompson, J., and Gustafson, J., concurred.