79 Cal.App.3d 725 (1978)
145 Cal. Rptr. 205
In re the Marriage of SIEGLINDE A. and WAYDE W. SMITH.
WAYDE W. SMITH, Respondent,
v.
SIEGLINDE A. SMITH, Appellant.
Docket No. 17458.
Court of Appeals of California, Fourth District, Division Two.
April 11, 1978.
*735 COUNSEL
Robert B. White and James E. Sutherland for Appellant.
Christensen, Fazio, McDonnell, Briggs, Ward & DeSales, Steven E. Briggs and Roy A. Hoff for Respondent.
OPINION
KAUFMAN, Acting P.J.
Sieglinde A. Smith (wife) appeals from portions of an interlocutory judgment of dissolution of marriage entered September 2, 1976. Wayde W. Smith, petitioner below and respondent on appeal, will be referred to as husband.
When they separated on April 1, 1975, the parties had been married 19 years and approximately 2 months. Wife was then 43 years old; husband was 44. The parties had two sons who were 19 and 20 years of age at the time of trial.
During the last 10 years of their marriage, the parties owned and operated a custom sign-making business. Basically, husband handled the technical work, production and sales. Wife performed primarily bookkeeping and clerical duties. Net income from this business averaged $17,000 per year from 1972 to 1974. For 1975 it was $9,818.
*736 In addition to the family business and the residence, the parties owned two automobiles and several small rental properties.
As the result of an order to show cause heard August 19, an order was made on September 2, 1975, giving husband exclusive use, occupancy and control of the family business and excluding wife therefrom. The order also provided for joint occupancy of the family residence. Husband was ordered to pay during his occupancy the trust deed payments and charges for electricity, water and trash pick-up. Wife was ordered to pay charges for gas. In addition, husband was ordered to pay to wife $200 per month spousal support. The parties were permitted to continue to collect rents from the properties under their respective control and ordered to pay therefrom any trust deed payments, taxes, insurance premiums, assessments and utility bills that should become due. The property known as the Kingman property under the control of wife produced a net income of approximately $90 per month.
Trial was had April 22, 1976. The interlocutory judgment entered September 2, 1976, awarded the family business to husband. The family residence was awarded to wife. In accordance with a stipulation of the parties, one of the rental properties in which the parties had a gross equity of $9,382 was ordered sold with the proceeds of sale to be used primarily for the payment of community debts and attorney fees of both parties. The other rental properties were distributed to the parties in accordance with their wishes, wife receiving the Kingman property.[1] Husband was ordered reimbursed from the community $2,678.77 paid by him after the separation of the parties on preexisting community obligations.[2] Properties purchased in whole or in part or improved with wife's separate funds were found to be community property and wife was denied any reimbursement therefor. Husband was ordered to pay wife $1,476.50 to equalize the property division. Finally, husband was ordered to pay spousal support for a period of five years upon the expiration of which spousal support was terminated. The order provides for automatic "step down" of support over the five-year period: $350 per month for the first year; $250 per month for the second year; $150 per month during the third year; $50 per month in the fourth year; and $1 per year for the fifth year.
*737 Additional facts pertinent to the issues on appeal are set forth in our discussion.

Automatic Termination of Spousal Support
(1a) Wife contends the court abused its discretion in ordering automatic termination of spousal support at the end of five years thereby divesting itself of jurisdiction to extend the period or order the payment of any support whatever after that time. We agree.
(2) "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not `burn its bridges' and fail to retain jurisdiction." (In re Marriage of Morrison, 20 Cal.3d 437, 453 [143 Cal. Rptr. 139, 573 P.2d 41]; accord: In re Marriage of Brantner, 67 Cal. App.3d 416, 421 [136 Cal. Rptr. 635]; In re Marriage of Kelley, 64 Cal. App.3d 82, 94-95 [134 Cal. Rptr. 259]; In re Marriage of Dennis, 35 Cal. App.3d 279, 284-285 [110 Cal. Rptr. 619]; In re Marriage of Rosan, 24 Cal. App.3d 885, 897-898 [101 Cal. Rptr. 295].) (1b) The marriage here was more than 19 years, and the evidence does not clearly indicate that wife would be able adequately to meet her financial needs at the expiration of five years.
For the last 10 years of the marriage wife was active in the operation of the family sign-making business. She asked that the business be awarded her in the property division, but the court determined the business should be awarded to husband. Thus wife was effectively discharged from the only employment she had known during the past 10 years. Following separation of the parties, wife received career counseling at the University of California at Irvine in which she was advised she should attempt to obtain a bachelor's degree in business administration. To that end she has commenced and is pursuing studies at Cerritos Junior College. At the time of trial she was otherwise unemployed. She had taken and passed a written civil service examination for part-time employment with the State of California as a claims adjuster and was awaiting an oral interview, but her obtaining that work was problematical. *738 Notwithstanding her work in the family business, wife's secretarial skills are minimal: she does not take shorthand nor type on electric typewriters. Some 8 to 10 years before the separation of the parties, wife obtained a temporary real estate salesman's license and worked on a part-time basis as a real estate salesman. She was successful as a salesperson, but she no longer holds the license and does not believe the irregular commissions of a real estate salesperson would enable her to meet her regular obligations.
Wife is in good health except for a thyroid problem. Her only independent source of income is the net rental from the Kingman property amounting to $90 per month. At trial wife testified she would need $750 per month support until she attained her degree.
Although wife has some employable skills and is not a typical "displaced homemaker," it is apparent that at time of trial she was not able to provide entirely for her own reasonable support. The court's award of spousal support is recognition of that fact. What evidence is there, then, clearly indicating wife will be entirely self-sufficient at the end of five years? Husband suggests none, and we perceive none. It may be inferred from the court's order reducing support to $1 per year at the end of four years and terminating support at the end of five years that the court entertained the expectation that wife would obtain her degree in business administration and become self-supporting within four to five years. It may be the court's expectation will be fulfilled. From the record, however, that expectation must be classified as speculative or hopeful. Even if wife obtains her bachelor's degree within four years, there is no assurance that she will automatically become self-sufficient by virtue of that fact. There is no evidence of any definite employment opportunity awaiting her upon her attaining a degree. As the court observed in Dennis: "It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by ... wife to become wholly ... self-supporting." (35 Cal. App.3d at p. 285.) The retention of jurisdiction over spousal support beyond the five-year period would impose no undue burden on husband. If the court's expectation that wife will become fully self-supporting within five years proves correct, it can terminate spousal support upon that event. Contrastingly, by making an order terminating all spousal support at the end of five years without reserving jurisdiction to extend the period, the court put it out of its power to provide any support whatever for wife after that time even if, after maximum effort on her part, she is unable to support herself in a reasonable fashion. There is no justification for the court so "burning its *739 bridges." (In re Marriage of Morrison, supra, 20 Cal.3d at p. 453; In re Marriage of Brantner, supra, 67 Cal. App.3d 416; In re Marriage of Kelley, supra, 64 Cal. App.3d at pp. 94-95; In re Marriage of Dennis, supra, 35 Cal. App.3d at pp. 284-285; In re Marriage of Rosan, supra, 24 Cal. App.3d at pp. 897-898.)

Automatic "Step-down" Provision
(3a) Although wife requested spousal support of $750 per month until she attained her bachelor's degree, she does not contest on appeal the amount of the award for the first year, $350. She contends, however, the provisions for automatic "step-down" reducing support to $250 per month during the second year, $150 per month during the third year, $50 per month during the fourth year and $1 per year for the fifth year, are based on speculative expectations rather than inferences rationally drawn from the evidence and constitute, therefore, an abuse of discretion. We have concluded wife's contention is well taken with respect to each automatic step-down except the last.
As previously indicated, wife's present inability to provide for her entire support was recognized by the trial court in its award of spousal support. The court determined the amount reasonably needed and which husband is able to pay is presently $350 per month. (4) (See fn. 3.) In making that determination the court presumably considered all the relevant factors, including the circumstances of the parties, wife's needs and earning capacity and husband's financial ability to pay.[3] (3b) There is no evidence in the record that any of the relevant factors will change significantly after one year, two years or three years. It is reasonably clear from the order made, the court contemplated that wife *740 would continue her studies toward a bachelor's degree and that she would seek and obtain part-time employment while so doing. There is no evidence her earning capacity will increase or her needs decrease or that husband's financial ability to pay will decrease during the period wife is pursuing her bachelor's degree.
(5) It is true, of course, that an order for automatic reduction in the amount of spousal support, which is itself modifiable, does not involve nearly as great a risk as an order terminating support by which the court loses jurisdiction to effect any modification should its expectations prove unjustified. (In re Marriage of Morrison, supra, 20 Cal.3d at p. 454, fn. 11; In re Marriage of Kelley, supra, 64 Cal. App.3d at p. 95.) Nevertheless, "orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations." (In re Marriage of Rosan, supra, 24 Cal. App.3d at p. 896; accord: In re Marriage of Brantner, supra, 67 Cal. App.3d at p. 421; cf. In re Marriage of Kelley, supra, 64 Cal. App.3d at p. 95.)[4]
(3c) The reduction of support to $1 per year at the end of four years does appear to be supported by rational inferences drawn from the evidence. While perhaps not entirely unspeculative, it can be inferred that wife should conclude her schooling and receive her degree within four years. Although there is no evidence of the amount she would then be able to earn, it is reasonable to infer her marketable skills will then be significantly greater and she will be in a position to accept employment on a full-time basis. Wife herself recognized that completion of her studies would constitute a significant change in her circumstances, for she testified the amount of support she needed was $750 a month "until I get a degree." We conclude, therefore, there was no abuse of discretion in the court's reducing spousal support to $1 per year after four years.
*741 Actually, of course, unlike the automatic reductions to $250, $150, and $50 per month, the reduction to $1 per year was not in reality so much an attempt by the court to fix the amount of support at a future date as a recognition that completion of wife's studies would be an appropriate occasion for re-evaluating and redetermining her need for spousal support in view of the circumstances existing at that time. (See In re Marriage of Andreen, 76 Cal. App.3d 667, 672-673 [143 Cal. Rptr. 94].) (6) It must be recognized, however, that such an order, like any order automatically reducing the amount of support at a future date, has a significant effect on subsequent modification proceedings in the event the court's expectations as to future circumstances prove unjustified. A modification may be obtained only upon a showing of a material change in circumstances since the last order. (Edwards v. Edwards, 52 Cal. App.3d 12, 15 [124 Cal. Rptr. 742]; In re Marriage of Kuppinger, 48 Cal. App.3d 628, 633 [120 Cal. Rptr. 654]; Hester v. Hester, 2 Cal. App.3d 1091, 1095 [82 Cal. Rptr. 811].) When the court makes a "step-down" order based on its expectation of future circumstances, it places upon the supported party the burden of proving the existence of a material change in circumstances if its expectations do not materialize. The burden thus shifted to the supported party is increased by the difficulty in proving the expected circumstances upon which the "step-down" order was based. The financial declarations filed by the respective parties, which are very useful in ascertaining whether there has been a change in circumstances following an order for support in a fixed amount, are of little value in ascertaining the anticipated circumstances relied on by the court in ordering the automatic future reduction. Happily, when Civil Code section 4801, subdivision (a), was amended in 1976, provisions were added requiring the court, on request of either party, to set forth the circumstances it found and relied on in ordering or modifying spousal support.[5] (Civ. Code, § 4801, subd. (a).) Of course nothing prohibits a trial court from making such findings even in the absence of a request therefor, and findings disclosing the circumstances contemplated by the court are particularly useful where a "step-down" order is made.

Use of Wife's Funds to Purchase or Improve Property
(7a) During the marriage wife inherited some $14,000 from an uncle. Wife deposited these funds in a checking account owned by the parties jointly. Thereafter, from the funds so deposited, wife paid $1,500 as a down payment on real property referred to as the Costa Mesa property *742 and $7,556 in payment of the costs of construction of a swimming pool added to the family residence. While wife was in Germany on personal business, an opportunity to purchase a cutter for use in the family business materialized, and husband purchased the cutter with $1,925 from these funds. The court found these properties were community property and denied wife reimbursement for any of her separate funds used in the acquisition or improvement of them. The pertinent part of the interlocutory judgment reads: "The Court finds ... that any contributions heretofore made by [wife] toward the acquisition of any of the assets of the parties were merged with the community estate and were a gift to the `community' and awards nothing to [wife] by reason thereof."
(8) Wife contends the finding and order are erroneous, but it is not entirely clear whether she contends that the court should have determined these properties or some interest therein to be her separate property or that it should have ordered reimbursement to her from the community. For example, it is urged that the court's use of the expression "merged with the community estate" indicates the court erroneously applied the commingling doctrine, which doctrine, of course, is germane to determining whether property is community or separate, not to the propriety of reimbursement.
Wife is correct that no problem of commingling was presented, for the testimony of both parties established the moneys paid in the acquisition and improvement of these properties came from the funds wife inherited. However, we are not persuaded the court's use of the quoted language indicates it applied the commingling doctrine. More likely, all it meant was that the funds used had become community property by virtue of a gift thereof to the community by wife. In any event, the quoted language clearly includes a finding that the funds used constituted a gift to the community, and this finding is conclusive as to the character of the property. (9) "[E]ven in the absence of an explicit agreement, ... a court may find a transmutation of property if the circumstances clearly demonstrate that one spouse intended to effect a change in the status of his separate property." (Beam v. Bank of America, 6 Cal.3d 12, 25 [98 Cal. Rptr. 137, 490 P.2d 257]; see also In re Marriage of Wall, 30 Cal. App.3d 1042, 1050 [106 Cal. Rptr. 690].) (10) The finding of a trial court that the property is either separate or community in character is binding on the appellate court if supported by substantial evidence. (Beam v. Bank of America, supra, 6 Cal.3d at p. 25, In re Marriage of Wall, supra, 30 Cal. App.3d at p. 1048.) (7b) Here, the finding of the *743 trial court that wife's separate funds used in the purchase and improvement of these properties was intended by wife to be a gift to the community and that the properties constitute community property is amply supported by the evidence.
In the first place, the record indicates it was never seriously contended at trial these properties were separate property. In wife's response to the petition for dissolution all properties are listed as subject to disposition by the court and there is no request to confirm any property as the separate property of wife. As we read the record, at trial wife's position was that she was entitled to reimbursement. Moreover, wife testified she considered the swimming pool, the Costa Mesa property and the business equipment to be part of the community property. She further testified she never requested reimbursement or return of the moneys expended in the purchase and improvement of these properties. Husband testified there was never any discussion between the parties about the funds thus expended retaining their separate character or about the property purchased with these funds becoming wife's separate property. Wife's testimony that no gift was intended by her only created a conflict in the evidence for resolution by the trial court.
Neither was wife entitled to reimbursement. (11) With respect to transactions prior to separation, it is well settled that a spouse who uses his or her separate property for community purposes is entitled to reimbursement from the community or separate property of the other spouse only if there is an agreement between the parties to that effect. (E.g., Weinberg v. Weinberg, 67 Cal.2d 557, 570 [63 Cal. Rptr. 13, 432 P.2d 709]; See v. See, 64 Cal.2d 778, 784-785 [51 Cal. Rptr. 888, 415 P.2d 776]; In re Marriage of Cosgrove, 27 Cal. App.3d 424, 430-431 [103 Cal. Rptr. 733].) (12) There is no evidence whatever of any agreement for wife's reimbursement, and the court's finding that wife intended these expenditures of her separate funds to be gifts to the community is entirely inconsistent with the existence of such an agreement.

Reimbursement of Husband for Payment of Community Debts With His Separate Funds After Separation
(13) After separation and before trial, husband paid $2,678.77 on preexisting community debts. There is no evidence of any agreement between the parties for husband's reimbursement. The trial court ordered husband reimbursed from the community property for these *744 expenditures. (See fn. 2, ante.) Wife's contentions that this order is erroneous are two. First, she contends there is no showing these expenditures by husband were made from his separate funds.[6] Secondly, she contends that, since there was no evidence of any agreement for husband's reimbursement, reimbursement was precluded by the same rule just applied to her situation, that is, that a spouse who uses separate property for community purposes is entitled to reimbursement only if there is an agreement between the parties for such reimbursement. (Weinberg v. Weinberg, supra, 67 Cal.2d at p. 570; See v. See, supra, 64 Cal.2d at pp. 784-785; In re Marriage of Cosgrove, supra, 27 Cal. App.3d at pp. 430-431.) Husband contends the stated rule is inapplicable to the use of separate funds for the payment of preexisting community obligations after separation.
Wife is correct that there is no showing these payments by husband were made with his separate funds. The court did not so find, and even if such a finding could be inferred, it would not be supported by the evidence, for husband testified only that he made these payments after April 1, 1975, the date of separation. There is no evidence whatever concerning the source of the funds used for these payments. The order for reimbursement must therefore be reversed. However, it would be inappropriate to order judgment entered in favor of wife on this issue, for it appears most probable that some of the funds paid came from husband's earnings after separation which were, of course, his separate property. (Civ. Code, § 5118.) On remand, the court will have an opportunity to consider wife's claim that some of the money drawn by husband from the family business after separation must have been community property resulting from the collection of accounts receivable predating the separation or being attributable to return on the capital investment in the business which, of course, was a community asset.
(14a) Since it will arise on retrial of this issue, it is necessary for us to resolve the question whether the no-reimbursement rule exemplified in Weinberg, See and Cosgrove is applicable to the use of separate funds for *745 payment of preexisting community debts after separation[7] of the parties. (Code Civ. Proc., § 43.) We conclude it is not.
We first observe that, so far as we have discovered, this rule has never been applied to the use of separate property for the payment of community debts after the separation of the parties. In every case brought to our attention in which the rule was applied, whether reimbursement was allowed or denied, the separate funds were used for community purposes prior to separation of the parties. (E.g., Weinberg v. Weinberg, supra, 67 Cal.2d at p. 570; See v. See, supra, 64 Cal.2d at pp. 784-785; In re Marriage of House, 50 Cal. App.3d 578, 580 [123 Cal. Rptr. 451]; In re Marriage of Wall, supra, 30 Cal. App.3d at p. 1050; In re Marriage of Cosgrove, supra, 27 Cal. App.3d at pp. 430-431; Chimenti v. Chimenti, 4 Cal. App.3d 354, 357 [84 Cal. Rptr. 32]; Haseltine v. Haseltine, 203 Cal. App.2d 48, 52 [21 Cal. Rptr. 238]; Blackburn v. Blackburn, 160 Cal. App.2d 301, 303-304 [324 P.2d 971]; Thomson v. Thomson, 81 Cal. App. 678, 684 [254 P. 644]; cf. Ives v. Connacher, 162 Cal. 174, 177-178 [121 P. 394].)
The only case brought to our attention dealing with the use of separate property for the payment of a preexisting community debt after separation of the parties is Vides v. Vides, 215 Cal. App.2d 601 [30 Cal. Rptr. 447]. In that case, after separation husband refused to make the trust deed payments on the parties' home which was community property. Wife therefore made the payments with her separate funds. The trial court ordered the home sold but declined to order reimbursement to the wife for the payments made. The Court of Appeal modified the judgment to provide wife reimbursement.[8] We place no great reliance on Vides as authoritative precedent, however, because its underpinnings are suspect. Indirectly, the court appears to have placed some reliance upon several cases authorizing reimbursement in the absence of an agreement therefor when community debts were paid with separate property at a time when community funds were exhausted. (215 Cal. App.2d at p. 603.) These cases were disapproved on this point in See v. See, supra, 64 Cal.2d at pp. 785-786. Next, the Vides court noticed a no-reimbursement rule as applied in Blackburn and Thomson, but distinguished those cases on the basis that in them the wife sought *746 reimbursement from the separate estate of the husband whereas in Vides reimbursement was sought from the community property, in fact, from the very asset on which the payments were made. (215 Cal. App.2d at p. 603.) However, the rule as set forth in See (64 Cal.2d at p. 785) and repeated in Weinberg (67 Cal.2d at p. 570) and Cosgrove (27 Cal. App.3d at p. 431) applies to reimbursement from either the community property or the separate property of the other spouse.[9]
However, our conclusion is supported by reason, practical necessity and policy considerations. (15) The rule denying reimbursement in the absence of an agreement therefor is based largely on the presumption the paying spouse intended a gift. (See See v. See, supra, 64 Cal.2d at p. 785; cf. Dunn v. Mullan, 211 Cal. 583, 589-590 [296 P. 604, 77 A.L.R. 1015]; Ives v. Connacher, supra, 162 Cal. at p. 177.) This presumption is, in turn, largely based no doubt upon the natural feelings of mutual affection and generosity presumably attending the marital state. When the parties have separated in anticipation of dissolution of the marriage, the rational basis for presuming an intention on the part of the paying spouse to make a gift is gone.
Moreover, the practical realities are that almost all married couples have incurred debts which are customarily paid out of their earnings and that, upon separation of the parties, their earnings, the usual, and perhaps only, liquid community asset available for payment of debts, become their respective separate property (Civ. Code, § 5118). Since upon dissolution both community assets and obligations must generally be distributed to the parties equally (Civ. Code, § 4800; Cal. Rules of Court, rules 1201(d), 1242; In re Marriage of Fonstein, 17 Cal.3d 738, 748 [131 Cal. Rptr. 873, 552 P.2d 1169]), debts remaining unpaid at the time of trial will be accounted for in the distribution of community property and, in effect, charged against the community estate.[10] However, when, after separation, one of the spouses makes payments on preexisting *747 community debts out of earnings or other separate funds, if the no-reimbursement rule is applied, the result is that community obligations which would otherwise be charged against community property and borne by the parties equally are charged exclusively to the paying spouse. Thus, application of the no-reimbursement rule will discourage payment of community debts after separation, exacerbate the financial and emotional disruption which all too frequently accompanies the breakup of a marriage and, perhaps, result in impairing the credit reputations of both spouses.
(14b) So, we are persuaded the rule disallowing reimbursement in the absence of an agreement for reimbursement should not apply and that, as a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution. (16) However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically.[11]
Reimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, where there was an agreement between the parties the payment would not be reimbursed or where the paying spouse truly intended the payment to constitute a gift or, generally, where the payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.
Likewise, reimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties. Both spouses have a duty to support their dependent children. (Civ. Code, §§ 242, 4700.) Similarly, the spouses *748 owe to each other mutual duties of support. (Civ. Code, §§ 242, 5100, 5132.) Following separation, the preferred source for payment of support is the separate property of the supporting spouse that would have been community property if the spouses were not separated. (Civ. Code, § 4805.) Payment of a debt, of course, may constitute payment of spousal or child support. (See Gay v. Gay, 146 Cal. 237, 243 [79 P. 885]; Bushman v. Superior Court, 33 Cal. App.3d 177, 181-183 [108 Cal. Rptr. 765]; In re Hendricks, 5 Cal. App.3d 793, 797-798 [85 Cal. Rptr. 220]; cf. Civ. Code, § 4358.) When in fact it does, reimbursement is inappropriate. (See v. See, supra, 64 Cal.2d at p. 784.)
(17) There occur to us several considerations pertinent to the determination whether a given payment was in reality in discharge of the paying spouse's duty to support. Where the payment was made pursuant to a court order, if the order specifies whether or not reimbursement is to be had, naturally the order will control. The advisability of including such a specification in every order for payment of debts is obvious. Where the court order does not specify whether or not reimbursement is to be had or where the payment made was not required by a court order, the determination will be made on the basis of the relevant facts and circumstances. However, two prime considerations will obviously be whether or not there was a need for spousal or child support at the time the payment was made and whether or not the payment made was in addition to reasonable support already being provided by the paying spouse either pursuant to or in the absence of a court order.
Naturally, neither the trial court nor the parties were apprised of these principles at the time of trial, and the pertinent facts were not sufficiently developed to permit us to attempt to apply them even if we knew which payments were made with separate property. Accordingly, the order for husband's reimbursement will be reversed with directions to the trial court to retry the question of husband's reimbursement in accordance with the principles we have explicated.

Distribution of the Family Business to Husband
(18a) Wife requested the family sign-making business be distributed to her rather than husband. She contends the trial court prejudged the issue and prejudicially erred in excluding evidence relevant to the issue. Wife's contentions revolve around an incident at trial in which the trial court refused to receive the testimony of one of the adult sons of the parties concerning husband's drinking.
*749 The son was called as a witness by wife. Counsel for wife asked him to "tell the Court just briefly about his [husband's] drinking in the home." Counsel for husband interposed an objection on the grounds of irrelevancy and immateriality. The following dialogue ensued:
"THE COURT: What's the materiality?
"MR. WHITE [counsel for wife]: The operation of the business, your Honor.
"THE COURT: Once again, what difference does it make? If he wants to be drunk twenty-four hours a day running his business, that's his life.
"MR. WHITE: Because we want the business. That's the problem.
"THE COURT: That has nothing to do with it. If he wants to squander it, that's his business.
"MR. WHITE: Do you feel the same way about closing up the shop  because I don't want to waste the Court's time  if he plays golf and closes up and neglects his business?
"THE COURT: These people have decided to go their separate ways.
"MR. WHITE: That's true.
"THE COURT: What particular roads they take from here on out makes no difference whatsoever. So for this Court to spend hours, especially to put this young man here on and pit him right in between his father and mother and cause him to have the heartaches of having to be used by these two people, only because they have decided to disagree  I'm not going to allow it, counsel."
Thereupon, counsel for wife desisted from attempting to examine the witness further and excused him.[12]
Wife urges the court's statements "[i]f he wants to be drunk twenty-four hours a day running his business, that's his life," and "[i]f he wants to squander it, that's his business," indicate it determined to award the business to husband before hearing or considering all the evidence. The *750 quoted statements can certainly be read to so indicate. (19a) If the court felt a showing that husband had such a drinking problem he would no longer be able to operate the business successfully would have been irrelevant, it was mistaken. The business constituted a valuable community property asset and, more importantly, would provide a means of livelihood to one of the parties in the future. Wife had been active in operation of the business and was seeking its distribution to her. Under the circumstances, a showing that husband was not capable of carrying on the business successfully would certainly have been probative. (18b) On the other hand, the significance wife apparently attaches to the court's use of the expression "his business" is unwarranted. Throughout the trial the family business was referred to on numerous occasions by all concerned, including wife's counsel, as being "his" business.
That it is improper to reach a final determination on a disputed issue prior to receipt of all of the evidence requires no citation of authority. However, we decline to impute to the trial judge such injudicious conduct on the basis of these isolated, somewhat ambiguous statements. The statements are accounted for more properly, we think, by the court's obvious annoyance at the prospect of testimony from a son of the parties which would be adverse to one of them and relate, in the court's view, primarily to a personal problem. Most significantly, after this incident had occurred, the court received much evidence relating to wife's ability to operate the business, her plans for learning the technical aspects of the business and one or more of the persons she intended to employ to assist her. Had the court already finally determined it was going to award the business to husband, it is not likely it would have patiently received all this evidence.
(19b) Turning to the question of prejudicial exclusion of evidence, we observe that the question asked the witness related to husband's drinking in the home. The objection to this question on grounds of irrelevancy and immateriality was properly sustained. However, the court went further than simply sustaining the objection; it foreclosed all testimony by the witness. Without question that was serious error. (Cf. Pratt v. Pratt, 141 Cal. 247 [74 P. 742].) (20) "A party is entitled to have received in evidence and considered by the court, before findings of fact are made, all competent, material, and relevant evidence which tends to prove or disprove any material issue raised by the pleadings." (Bole v. Bole, 76 Cal. App.2d 344, 345-346 [172 P.2d 936].) (19c) Nevertheless, we have concluded that in the particular circumstances of this case, the error, though serious, was not prejudicial.
*751 (21) We are enjoined that no judgment shall be reversed on account of the erroneous exclusion of evidence unless it appears, upon examining the entire cause including the evidence, a miscarriage of justice has resulted. (Cal. Const., art. VI, § 13; see also Evid. Code, § 354.) A miscarriage of justice should be declared only when the reviewing court is convinced after an examination of the entire case, including the evidence, that it is reasonably probable a result more favorable to the appellant would have been reached absent the error. (Code Civ. Proc., § 475; Daly v. General Motors Corporation, 20 Cal.3d 725, 746 [144 Cal. Rptr. 380, 575 P.2d 1162]; Brokopp v. Ford Motor Co., 71 Cal. App.3d 841, 853 [139 Cal. Rptr. 888].)
(19d) Wife asserts the excluded testimony would have been relevant not only to the issue of disposition of the business, but also to husband's ability to pay support and the value of the business. However, since wife makes no attack on the value assigned to the business by the court or the initial amount of support she was awarded, the significance of the evidence as to those issues can be disregarded. As to disposition of the business, we are convinced it would have been the same had the son's testimony not been excluded. The evidence indicates overwhelmingly that a great deal of technical knowledge and experience was required in the conduct of the business, that husband had the required knowledge and experience including 30 years' experience in photographic reproduction, but that wife had no such knowledge or experience nor any firm arrangements for employing persons with the requisite qualifications. In addition, it appears husband had established a special relationship or rapport with many of the customers whose patronage would likely not continue if husband were not operating the business. Although wife wanted the business, she also wanted the court to impose on husband a restriction against competing with her should the business be awarded to her. Under the circumstances, there is no reasonable probability the business would have been awarded to wife even had the son been permitted to testify.

Valuation of Residence  Evidence of Comparable Sales
(22a) On division of the community property, the court distributed the family residence to wife at a value of $52,000. Although she herself testified she thought the property was worth $50,000, wife complains of the inflated value assigned to this property. She contends the court erroneously excluded testimony of her appraiser concerning comparable *752 sales and that, had it not done so, the court might have given greater weight to the expert opinion of her appraiser that the value of the residence was $48,000.
(23) The admissibility of properly qualified evidence of comparable sales of other real property to prove the value of real property in issue was exhaustively considered in County of Los Angeles v. Faus, 48 Cal.2d 672, 676-680 [312 P.2d 680]. Overruling and disapproving statements to the contrary in a large number of cases, the court there held such evidence admissible. (48 Cal.2d at pp. 679-680.) Faus, of course, was a condemnation proceeding, and by virtue of the subsequent enactment of Evidence Code sections 813 and 816, evidence of comparable sales is no longer admissible in condemnation proceedings as independent substantive proof of the value of the property in issue, "but only as a factor to be used in weighing the opinion testimony of value expressed by the witnesses." (In re Marriage of Folb, 53 Cal. App.3d 862, 870.) However, Evidence Code sections 813 and 816 apply only to condemnation proceedings, not civil actions and proceedings generally. (Evid. Code, § 810.) As to the latter, the Evidence Code provides: "Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) Faus and the authorities it discussed authoritatively establish that properly qualified evidence of comparable sales of real property is relevant to the issue of value of the real property in litigation. (48 Cal.2d at pp. 676-679.) We are thus led to the conclusion that in civil actions and proceedings other than condemnation proceedings, properly qualified evidence of comparable sales of real property is admissible to prove the value of real property in litigation. (Cf. County of Los Angeles v. Faus, supra, 48 Cal.2d at pp. 676-680; see also In re Marriage of Folb, supra, 53 Cal. App.3d at p. 871; Witkin, Cal. Evidence (2d ed. 1966) § 363, pp. 322-323.)
(24) However, to be admissible, evidence of comparable sales must be properly qualified. A foundation must be laid indicating the other property sold was sufficiently similar to the property in litigation to indicate "`the price realized for the other land may fairly be considered as shedding light on the value of the land in question.'" (County of Los Angeles v. Faus, supra, 48 Cal.2d at p. 678.) It must also appear that the other sale was genuine and sufficiently voluntary to be a reasonable index of value and that the price was actually paid or substantially secured. (Id., at p. 679.) In addition, of course, the evidence must be offered in unobjectionable form. (22b) The transcript discloses that, except in a single instance in which wife's expert was permitted to state *753 the price realized, the exclusion of wife's evidence of the assertedly comparable sales was due to her failure to lay a proper foundation and, in many instances, her failure to offer the evidence in a form free from objection. Actually, most of her efforts were misdirected at attempting to introduce the portion of her appraiser's report setting forth the asserted comparables. The report was, of course, hearsay and was properly excluded on husband's objections. We have thoroughly reviewed the trial court's rulings during the course of wife's attempt to introduce evidence of the asserted comparable sales and we find no error.

Disposition
That part of the judgment ordering husband to pay spousal support to wife is modified by deleting the whole thereof and substituting therefor the following: "Unless earlier terminated or modified by reason of the death or remarriage of respondent or further order of court, petitioner is ordered to pay to respondent, as and for spousal support, the sum of $350 per month for 48 consecutive months commencing June 1, 1976 and thereafter the sum of $1 per year until further order of the court. Monthly payments shall be paid one-half on the first and one-half on the 15th day of each month." That part of the judgment providing for reimbursement to husband from the community for payment by husband on account of community obligations after separation of the parties is reversed with directions to the trial court to retry that issue in accordance with the principles explicated in this opinion. Since the partial reversal will not affect the division of the community property except as to the amount of the equalizing payment required of husband, it is unnecessary to disturb the court's disposition of the specific community assets. Accordingly, in all other respects the judgment as modified is affirmed. Wife shall recover costs on appeal.
McDaniel, J., and Morris, J., concurred.
NOTES
[1] Wife's distributive share of the community property was approximately $45,000, of which $27,759 represented the equity in the family residence.
[2] This was accomplished by charging to wife's distributive share of the community property the sum of $1,339, one-half of the amount paid by husband.
[3] As applicable to the case at bench, Civil Code section 4801, subdivision (a), required the court to consider "the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment...." (Stats. 1971, ch. 1675, § 3, p. 3602.) These factors as well as many other relevant factors have long been considered by the courts in making support awards. (See In re Marriage of Morrison, supra, 20 Cal.3d at p. 449, fn. 9; In re Marriage of Rosan, supra, 24 Cal. App.3d at p. 892.) In 1976 the Legislature amended Civil Code section 4801, subdivision (a), by specifying a number of other circumstances to be considered. (See Stats. 1976, ch. 130, § 5; see In re Marriage of Brantner, supra, 67 Cal. App.3d at pp. 422-423.) The amendment effects no real change in the law, for the term "circumstances" has long been considered to include practically everything having a bearing upon the present and prospective matters relating to the lives of both parties. (See In re Marriage of Morrison, supra, 20 Cal.3d at p. 454; Hall v. Hall, 42 Cal.2d 435, 442 [267 P.2d 249]; In re Marriage of Rosan, supra, 24 Cal. App.3d at p. 893; Lamborn v. Lamborn, 80 Cal. App. 494, 499 [251 P. 943].)
[4] In Kelley, the court said: "Dennis [In re Marriage of Dennis, supra, 35 Cal. App.3d 279] teaches that a lesser showing is required to support such a modifiable order [award of spousal support in periodically reducing amounts] than one which burns the court's bridges by divesting it of jurisdiction despite error in its prognostication of the future." (64 Cal. App.3d at p. 95.) Actually, while the court in Dennis affirmed a "step-down" order, it did not discuss the "step-down" provision at all. In any event, however, in testing the order under review, the Kelley court expressly determined the "step-down" provisions there involved were justified by rational inferences drawn from the evidence. (64 Cal. App.3d at p. 95.)
[5] The 1976 statutory amendment did not take effect until after trial of this case, of course.
[6] This contention is made for the first time in the appellant's reply brief and ordinarily would not be considered. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 442, p. 4405, and cases cited.) An appellate court, however, may consider any point proper disposition of the case appears to require, whether taken by counsel or not. (Burns v. Ross, 190 Cal. 269, 275-276 [212 P. 17]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 442, p. 4406.) Moreover, the trial court had no opportunity to consider and apply the principles we explicate herein for resolution of the substantive question and the order for reimbursement would, therefore, require reversal in any event.
[7] As used herein "after separation" means after the spouses have commenced "living separate and apart" as that expression is used in Civil Code section 5118.
[8] In a subsequent appeal in the same case, reimbursement to wife for additional trust deed payments made after entry of the interlocutory decree was approved. (Vides v. Vides, 237 Cal. App.2d 453 [47 Cal. Rptr. 28].)
[9] In the case at bench, of course, only reimbursement from the community property is involved. We have no occasion, therefore, to consider the personal liability of the nonpaying spouse for reimbursement in the absence of sufficient community property to effect reimbursement.
[10] Wife's suggestion that our decision in In re Marriage of Eastis, 47 Cal. App.3d 459 [120 Cal. Rptr. 861], is somehow inconsistent with this conclusion, is incorrect. We there held only that the trial court may allocate equitably the burden of such community obligations as are in excess of all existing community property. (47 Cal. App.3d at p. 464.) Eastis has no application whatever to the case at bench in which community assets exceed community obligations, and the holding in Eastis effected no change whatever in the general rule that community assets and liabilities must be distributed equally.
[11] It was suggested at oral argument that reimbursement was allowed husband automatically in the case at bench pursuant to a provision in the Policy Memorandum of the Orange County Superior Court. A copy of the court's policy memorandum revised in November 1974 has been supplied to us, and under the heading "CREDITS" in a paragraph numbered 6, we do find the statement "Payment made by either party against community debts after the separation appear as `credits' in the balance sheet." In view of our reversal of the order for reimbursement, it is unnecessary for us to determine whether reimbursement was automatically granted in the case at bench. On remand, husband's right to reimbursement will be redetermined in accordance with the principles we explicate. Further, we are advised the court's policy memorandum is being revised, and we are confident such revision will take account of today's decision.
[12] There is some indication in the record that wife intended to call the other son as a witness also, but, as the result of the dialogue with the court, decided not to.