[Civ. No. 9153.    First Appellate District, Division One.—May 29, 1935.]

MARY McDEVITT et al., Respondents, v. BUTTE CITY
RANCH (a Voluntary Trust) et al., Defendants;
AETNA CASUALTY AND SURETY COMPANY (a
Corporation), Appellant.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Vincent W. Hallinan for Respondents.

TUTTLE, J., *pro tem.*—Plaintiffs seek by this action to rescind a contract whereby they were induced, through fraud, to exchange their own securities for trust certificates offered by two of the defendants, who were brokers and gave bonds in defendant surety companies under the Corporate Securities Act. Rescission was adjudged and, upon failure of defendants to return plaintiffs' securities, judgment was rendered against the surety companies in the sum of $4,000, their value, with interest amounting to $1,953.80. The sole appellant is defendant Aetna Casualty and Surety Company, and the appeal is taken from the judgment.

In November, 1924, defendants Norris and Bagnall were licensed brokers under the Corporate Securities Act. Appellant was a surety on the bond given by Norris under the terms of said act. The trial court found that Norris and Bagnall induced plaintiffs, through certain false and fraudulent representations, to part with securities of a value of $4,000 for securities which were of no substantial value whatever, with a resulting loss to plaintiffs of $4,000. The complaint sets forth the fraudulent representations, avers that notice of rescission based on that ground was duly given, and prays for a cancellation of the sale and a return of the securities.

■ It is first contended that appellant surety company is not liable in an action for *rescission* where the statutory bond is given under the Corporate Securities Act. This point was decided adversely to appellant's contention in the case of *Hogberg* v. *Landfield*, 99 Cal. App. 360 [278 Pac. 907], where it was held that the sale of securities by a licensed broker, accomplished through false and fraudulent representations, is a noncompliance with the provisions of the Corporate Securities Act, and that the surety on the broker's bond is liable for *any loss* suffered by any and all persons, where such loss is occasioned by reason of the broker's failure to comply with the act. This right of action exists by virtue of the terms of the statute. ■ Appellant seems to overlook the rule that in an action for rescission based upon fraud the court may enter an alternative judgment, the amount of which is based upon the value of the property which defendant is required to restore. (*Marks* v. *Howkins*, 55 Cal. App. 664 [203 Pac. 1035].) The amount of such money judgment is the "loss" referred to in the statute, and this is the measure of liability of the surety.

■ It is contended that plaintiffs failed to rescind with reasonable promptness. The determination of this matter was a question primarily for the trial court in the exercise of a sound discretion, having in view all the facts and circumstances of the particular case, and appellate courts will not interfere with the conclusions drawn below unless a manifest injustice has been done. This is the rule as stated in the case of *Bryan* v. *Baymiller*, 95 Cal. App. 481 [272 Pac. 1106], and numerous other cases therein cited. "A right of action to rescind a contract for fraud, false representations,

mistake, or other cause, does not accrue until the injured party acquires knowledge of the facts on which his claim for relief may be based.'' (Black on Rescission and Cancellation, vol. 2, 2d ed., p. 1324.) ██ Two of the false representations relied upon were that the securities delivered by defendants were first mortgage bonds and that they bore interest at the rate of 8 per cent per annum. It is pointed out by appellant that these securities were in the possession of plaintiffs for some eleven months before the time of rescission. It argues that plaintiffs could, by reading these certificates, readily ascertain the truth or falsity .of these representations at any time during this eleven months, and that, under such circumstances, they must be charged as a matter of law with laches for their failure to rescind more promptly. As the cases hold, this matter was one for the trial court. The degree of intelligence of plaintiffs, their capacity for understanding the language of these securities, the fact that they may have relied so implicitly upon the representations that it never occurred to them to resort to reading the language of the certificates—all of these matters were available to the court in the matter of the exercising of its discretion. Furthermore, ''the defense of laches . . . should not be entertained unless it is made to appear that it would be inequitable to deny it''. (Black on Rescission and Cancellation, vol. 2, 2d ed., p. 1348.) No contention of such resulting inequity is here made. We hold that the question of what is a reasonable time within which to rescind is one of fact, and are therefore not disposed to interfere with the finding that plaintiffs rescinded with reasonable promptness.

██ Appellant contends that it is being held liable not only for the acts of the broker whom it bonded, defendant Norris, but also for the acts of the *other* broker, defendant Bagnall. The trial court held that throughout the entire transaction they acted *jointly,*—that is, the two names appear as the actors throughout. It appears from the evidence that the exchange transaction was not consummated on one occasion, but during two meetings several days apart. The testimony of plaintiff, Mary McDevitt, is that these two defendants ''were always together''. The record indicated very clearly that in this scheme to defraud, these defendants worked in concert, and with a degree of ''team work'' which would put a first class football team to shame. The fact that

the other defendant conspired with defendant Norris certainly cannot operate to relieve the latter from full responsibility of the joint acts. Each joint fraud feasor is responsible for the ensuing wrong, regardless of his degree of activity. (*Lewis* v. *McClure*, 127 Cal. App. 439 [16 Pac. (2d) 166].) So, also, the notice of rescission was properly addressed to these defendants jointly.

■ The trial court allowed interest upon the amount of the loss, $4,000, from the date of the notice of rescission, November 25, 1925. Appellant claims that the demand was ''unliquidated'', and interest should therefore commence from the date of the judgment, citing *Perry* v. *Magneson*, 207 Cal. 617 [279 Pac. 650]. The action in that case was against the surety upon a construction bond. Obviously, the claim was uncertain and unliquidated, as the person liable did not know what he owned and therefore could not be in default for not paying. Such demands remain uncertain until fixed by accord or judgment. In the instant case the securities transferred to plaintiffs had, according to the evidence and findings, a value of $4,000. This presumably must have been known to defendants Norris and Bagnall when they gave plaintiffs their worthless paper. They therefore knew just the amount in which they were liable in the event their fraud was uncovered. The surety stands in no better position than its principal, and it is liable under the act for all loss occasioned by the broker through a failure to comply with its terms. Plaintiffs suffered loss not only of the *value* of the securities, but also the *interest* upon their value. Surely it cannot be contended that the amount of the loss was liquidated as to the broker and yet unliquidated as to his surety. If the plaintiffs had paid $4,000 cash for the securities offered by defendants, and rescinded and secured judgment for that amount so paid, they would have been entitled to interest on such amount from the date of their demand for a return. (*Knight* v. *Bentel*, 39 Cal. App. 502, 511 [179 Pac. 406].) If interest is allowed for money so paid, it follows that it should be allowed upon the value of property such as is here involved.

■ Appellant contends that defendant Norris was not a broker in this transaction, but the owner of the certificates he sold to plaintiffs, and hence not liable under the holding in the case of *Pollak* v. *Staunton*, 210 Cal. 656 [293 Pac. 26].

The Corporate Securities Act, Stats. 1923, page 89, includes in the definition of a "broker" every person engaged in the business "of purchasing such 'securities' with the purpose of re-selling them". While it does appear that Norris and Bagnall purchased these securities from defendant Butte City Ranch, it also appears that such purchase was made for the purpose of reselling to plaintiffs. We are of the opinion that under such circumstances Norris and Bagnall were "brokers" and that the transaction came within the purview of said act.

Fault is found with the details of the rescission. Plaintiffs were mother and daughter, and they were dealt with jointly, by the brokers. A portion of the securities was in the name of the mother, and a part in the name of the daughter. Notice of rescission was given, through her counsel, by the mother *alone* for the return of all such securities. The securities delivered to plaintiffs were made out in *both* of their names. There is sufficient evidence in the record to uphold a finding to the effect that the mother was acting for both in giving the notice. Certainly the defendant brokers could not have been misled by such a demand and notice. Furthermore, matters of this character were not brought to the attention of the trial court, and are not entitled to consideration here.

Other points urged for a reversal have been given consideration, but we find they lack sufficient merit to warrant further discussion.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 25, 1935.