[Civ. No. 7643.   Third Dist.   July 28, 1949.]

DORCAS JACKSON, Respondent, v. JAMES P. JACKSON, Appellant.

Griswold, Winton & Mayes for Appellant.

Preston, Braucht & George for Respondent.

THOMPSON, J.—The defendant has appealed from an interlocutory decree of divorce which was rendered against him on the ground of extreme cruelty. The decree also divided the community property of the spouses between them. The appellant raises no question on appeal regarding the validity of the divorce. He thereby concedes the adequacy of the evidence to support the divorce on the ground of extreme cruelty.

The appellant, however, contends that the findings with respect to the community properties of the spouses are conflicting, and that the award of certain properties to plaintiff as her community properties is not supported by the evidence.

Plaintiff and defendant were married May 22, 1945. They were separated July 18, 1948. There were no children born as the issue of the marriage. At the time of the marriage Mr. Jackson owned 89 acres of farm land in Merced County containing 26 acres of grape vines, together with almond and fruit trees, upon which the spouses thereafter lived. They continued to operate the ranch. There is evidence that it was valued at $54,000. Defendant also owned 10 acres of farm land, acquired by deed November 16, 1943, being the east one-half of Lot 36 of a tract called Fruitland Irrigation Colony No. 1, in Merced County, valued at $6,000. The spouses bought 50 acres of farm land in that county from James A. and Rose Orr, April 2, 1947. The deed was executed to them as joint tenants, but it was agreed between them that it would become their community property. It consisted of Lots

29, 30 and the east half of Lot 31, in Fruitland Irrigation Colony No. 1. The purchase price was $25,000. Plaintiff paid $1,500 thereof. A total sum of $9,000 was paid in cash and the spouses executed their note and trust deed thereon to secure the unpaid balance of the purchase price. The sum of $11,600 remains unpaid. A Packard automobile was purchased after the marriage for the sum of $3,800. They also bought a tractor for about $2,500, upon which $1,100 was paid in cash from their joint account. An almond huller was bought for $2,800, together with other farm equipment. They also purchased a radio, refrigerator, electric range and other household furnishings.

The defendant testified that the income of 1946 from the home place and the 10-acre ranch in the sum of about $34,300, together with the income therefrom in 1947, was paid into a joint bank account. He testified that during the first year of their marriage that account was kept in his name only, but that thereafter, except for a short time before the divorce was granted, it was kept in their joint names. Mrs. Jackson testified that he told her the amounts received from the proceeds of the ranches would be considered "as ours." She was asked, "As our income?" to which she replied "Yes." During the years 1946 and 1947, the spouses filed separate income tax reports in which they designated the proceeds from the ranches as "community income." The defendant testified in that regard:

"Q. Now your income tax return was prepared upon the basis of this, the figures in this work sheet, is that correct? A. Yes. Q. And did you and Mrs. Jackson file separate returns? A. We did. Q. And I note from the work sheet that you have attributed one-half of the total income to you and one-half to Mrs. Jackson. A. I understand that is customary. Q. And your income tax returns were filed on this same basis? A. Yes. . . . Q. And that was true for the income during the year 1946? A. Yes, and 1946 too. . . . Q. And is it true of your 1947 return . . .? . . . A. Yes. . . . Q. And you reported half of it for yourself and paid the tax on that and you reported half of it for Mrs. Jackson? And paid the tax on that? A. Yes. She received that half."

The court adopted findings favorable to the plaintiff on all essential issues, and rendered an interlocutory decree of divorce in her favor on the ground of extreme cruelty.

The defendant filed an answer to the complaint, denying the material allegations thereof, except that it was admitted

the 50-acre tract of land purchased by the spouses in 1947 "is community property belonging to the parties hereto," upon which an indebtedness for the purchase price remains unpaid in the sum of $11,600, which he agreed to pay. At the same time the defendant filed a cross-complaint for divorce on the ground of extreme cruelty. The plaintiff answered the cross-complaint, denying the material issues thereof and in paragraph I thereof affirmatively alleged that she had a community interest in the farms, machinery, equipment, household goods and money in bank.

The court found that the allegations of the complaint in paragraphs I to X, inclusive, except paragraph V, and paragraph I of the answer to the cross-complaint were true; that the defendant's allegations in his answer were untrue, and his allegations in paragraph IV and V of his cross-complaint were likewise untrue. In paragraph IV of the cross-complaint, which was found to be untrue, it was alleged, in effect, that the only community property which the spouses held was the 50-acre tract which was purchased in 1947. The court then found that the "90 acres" and the 10-acre tract, together with the Packard automobile, were the separate property of the defendant, but that "plaintiff and defendant mutually agreed between themselves that the rents, issues, and profits of the above described real property and the crops and income received or to be received therefrom *would be and become their separate property*"; that the costs and expenses of maintaining all of said farms, and the money expended for machinery were paid from said community funds; that the rents, issues and profits derived from said farms were "treated by the parties as their community property and was so reported in the income tax returns;" that the money in bank, in the sum of $700 and the unpaid proceeds of sales of their crops, in the further sum of $2,700, together with the proceeds of the crops now growing on the farms, "are community property." The court further found that specifically mentioned farm machinery and household goods were purchased from the community funds, and "are the community property" of the spouses. It was also determined that the 50-acre ranch purchased in 1947 was and is community property, subject to an indebtedness of $11,600.

The court thereupon awarded to plaintiff in the interlocutory decree, as her share of the community property, the following, to wit: The radio phonograph, electric range and frigidaire, together with the 50-acre tract of land purchased

in 1947, being "Lots 29, 30 and the east half of Lot 31 according to map entitled 'Fruitland Irrigation Colony No. 1'," in Merced County. The decree also provides that the defendant shall satisfy and pay one-half of the *unpaid purchase price*, amounting to the sum of $11,600, of the said 50-acre tract of land awarded to plaintiff, represented by the joint promissory note of the spouses secured by trust deed. The court decreed that said obligation of $5,800 and accrued interest, "be secured by a lien upon defendant's real property hereinafter described." The decree awarded all of the balance of the real and personal property to the defendant, including farm machinery, money on deposit in the bank in the joint names of the spouses, all unpaid moneys on sales of the crops of 1947, together with the 89-acre ranch and the 10-acre tract, being Lot 36 of the Fruitland Irrigation Colony No. 1, and the crops of 1948 growing thereon, subject only to the said lien on "said last described real property," to secure the payment of said sum of $5,800 and accrued interest, previously mentioned.

We are satisfied the findings are not conflicting regarding the properties which are determined to be community properties of the spouses, and that those findings are adequately supported by the evidence. The only properties which were awarded to plaintiff as her share of the community properties were the phonograph, electric range, frigidaire, the 50-acre tract in Merced County, which was purchased by the spouses in 1947, and said sum of $5,800 and accrued interest which defendant is required to contribute pursuant to agreement upon the joint note for the unpaid portion of the purchase price of that land. The defendant conceded that the phonograph belonged to plaintiff. He testified, "I consider the radio was my wife's." He admitted that the 50-acre ranch was purchased by them as community property in spite of the fact that the deed was executed in their joint names. He testified that they had a "separate agreement" in that regard. The following colloquy occurred:

"Q. Well, what do you mean by separate agreement? A. An agreement whereby—— . . . The Court: State what was said between you. . . . A. . . . That we would buy this [50-acre] place together, my wife had $1,500.00 in her account, a separate account, so she was to put that in *and I would put up the balance* and we would buy the Orr place, in which way she would have a community interest in this property, . . . ." (Italics added.)

. The court did not purport to distribute to plaintiff one-half interest only in the designated community properties. Both the findings and the decree distributed to plaintiff designated community properties and a definite sum of money derived from that source. The decree reads in that regard: "The community property of said parties shall be and is hereby *divided* and set aside to the parties in the following manner, towit": The specified properties which each spouse was to receive were then designated, as we have previously stated. No separate properties of the defendant were awarded to plaintiff. The court definitely found that the radio phonograph, electric range and frigidaire were purchased "with community funds." That finding is adequately supported by the evidence. The defendant testified that "the stove cost them $189.00," and that the refrigerator cost "a little over $200.00;" that the total cost of those two items was $400 or $450.

From the previously-quoted evidence of the defendant it appears that the spouses agreed that if plaintiff would pay from her separate funds $1,500 toward the purchase of the 50-acre Orr place, defendant would "put up the balance" of the purchase price of $25,000. She paid $1,500 of her money toward the purchase price of that property. The unpaid balance, at the time of the trial, was $11,600. Therefore, the sum of $11,900 was paid in addition to plaintiff's $1,500. It is immaterial whether the $11,900 was paid from receipts from the crops, or from defendant's separate funds, for the agreement was that he would personally "put up the balance" of the purchase price. The evidence shows that defendant agreed to pay the entire unpaid balance of the purchase price in the sum of $11,600, and that it was to become their community property. The trial court favored the defendant in that regard, for the decree merely requires him to pay one-half of said unpaid balance of the purchase price. There is ample evidence that the spouses agreed that said ranch would become community property.

Oral evidence is competent to show the agreement or intention of spouses that land would be acquired as community property even though the deed is executed in their names as joint tenants. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757 [146 P.2d 905]; *Sloper* v. *Sloper*, 91 Cal.App.2d 238, 244 [204 P.2d 910].)

The record shows that, in addition to the other two ranches which were defendant's separate property, there was

awarded to him the Packard automobile, which cost $3,800, upon which $1,600 remains unpaid, the almond hulling machine which cost $2,800, the tractor which cost $2,489, upon which $1,300 remains unpaid, and other farm equipment and household goods. The defendant also purchased a life insurance policy of $1,800. The defendant therefore profited to the extent of $7,000 to $10,000 from the community funds by assignment to him of the last-mentioned items. He was also awarded $700 cash in bank, and unpaid returns from sales of crops in 1947, amounting to $2,392, together with all proceeds from the growing crops of 1948.

The income tax reports show that the proceeds from the ranches in 1946, which were found to be community property, amounted to at least $34,300, of which sum the defendant admitted $9,676 was net income, and that the gross income from the farms in 1947, which was also found to be community property, was $27,434.95. Certainly those figures furnish ample evidence that plaintiff was not awarded property of a value in excess of a fair proportion of the community interests of the spouses.

In a suit for divorce which is granted on the ground of extreme cruelty the trial court has a wide discretion to award to the innocent party such proportions of the community property as it deems just under the circumstances and the conditions of the respective parties. In the absence of evidence to the contrary, even though the bulk of the community property has been awarded to the innocent party, the presumption will be indulged that the court has acted fairly and impartially and, except for an abuse of such discretion, the awards will not be disturbed on appeal. (Civ. Code, § 146; *Crouch* v. *Crouch*, 63 Cal.App.2d 747, 756 [147 P.2d 678]; *Tompkins* v. *Tompkins*, 83 Cal.App.2d 71, 77 [187 P.2d 840]; *Fahnestock* v. *Fahnestock*, 76 Cal.App.2d 817, 827 [174 P.2d 660]; *Cairo* v. *Cairo*, 87 Cal.App.2d 558, 562 [197 P.2d 208]; *Quagelli* v. *Quagelli*, 99 Cal.App.172, 176 [277 P. 1089]; *Tipton* v. *Tipton*, 209 Cal. 443 [288 P. 65].)

The appellant asserts that the court erred in imposing a lien on defendant's separate real property to secure the payment of one-half of a joint promissory note signed by the spouses and secured by a trust deed to the 50-acre tract of land which was awarded to plaintiff. The appellant assumes that the note for $11,600, one-half of which the defendant is required by the interlocutory decree to pay, is included in the distribution of community property to the

plaintiff, and that section 140 of the Civil Code does not authorize the court to impose a lien on defendant's separate property to secure that payment. We cannot agree with that construction of the findings and interlocutory decree.

We are convinced that the findings and decree first apportion between the spouses the community property, and then separately direct the defendant to pay one-half of the obligation represented by their joint and several note. Each spouse was bound to pay the entire debt by the terms of the note. The complaint asks for an allowance for support of plaintiff. Having the authority to settle the property rights between them, the court was justified, in its discretion, to require the defendant to pay one-half of that obligation. The findings first specifically divide between the spouses designated properties, including the 50-acre Orr ranch, as community properties. The decree, under a separate paragraph designated as "(c)" directs that "Defendant shall, and he *is hereby ordered to pay one-half of the unpaid balance of the promissory note* [of $11,600] . . . and that the payment of said sum . . . be secured by a lien upon defendant's real property hereinafter described." We conclude that the order for defendant to pay one-half of that note is separate and distinct from the preceding division of community properties. It is merely a separate equitable adjustment of the obligations of the spouses on that particular note.

With respect to the settlement of the property rights of the spouses in a divorce proceeding, section 140 of the Civil Code provides that,

"The court may require the husband or wife, as the case may be, to give reasonable security for providing maintenance *or making any payments required under the provisions of this chapter,* and may enforce the same by the appointment of a receiver, *or any other remedy applicable to the case.*" (Italics added.)

It is true that our Supreme Court has held that a divorce court may not impose a lien on the separate property of a husband, under section 140 of the Civil Code, to secure payment to the wife of the "share in the community property" which is allotted to her. (*Secondo* v. *Secondo*, 218 Cal. 453, 458 [23 P.2d 752]; *Sanguinetti* v. *Sanguinetti*, 9 Cal.2d 95, 102 [69 P.2d 845, 111 A.L.R. 342].) But the lien which was imposed in the present action was not to secure plaintiff *for her allotted share of the community property*. It was to insure payment to her of defendant's separate obligation on

a promissory note which he agreed to pay.

In the Sanguinetti case, *supra,* plaintiff brought suit for divorce. The husband denied the material allegations of the complaint and filed a cross-complaint for divorce on the ground of extreme cruelty and for an annulment. The only property which the parties possessed was a house and lot in San Francisco valued at $4,000, which the court found to be the separate property of the husband. He was granted an annulment on the ground of extreme cruelty, and was awarded the real property. But the wife was given judgment for the sum of $1,250 for the value of her services performed during the time they lived together as husband and wife. She was given a lien on his said separate property to secure payment of that amount. Both parties appealed. The plaintiff's appeal was dismissed. The defendant contended on appeal that the wife was not entitled to a lien on his separate property to enforce payment of the judgment for $1,250 in her favor. The Supreme Court held that the lien was valid and affirmed the judgment against him, including the vesting of the lien, on the apparent theory that the award to the wife of $1,250 for her services was within the equitable powers of the divorce court to assure the wife of reasonable maintenance. The court said at page 102 of the opinion:

"It cannot be held that the court was without right to decree a lien for the amount of $1250 awarded plaintiff on the San Francisco real property of defendant. Under section 140 of the Civil Code, the award of alimony in divorce actions may be decreed a lien on separate property of the husband. [Citing authorities.]"

In that case the plaintiff did pray for alimony, but there were no specific findings nor was judgment for alimony awarded. The trial court, however, did render judgment for plaintiff in the sum of $1,250 "as the reasonable value of her services rendered to defendant while they lived together." In the present case the plaintiff prayed for an allowance for her maintenance, but the trial court did not specifically make an allowance for maintenance, but did, similar to the judgment in the Sanguinetti case, render judgment against the defendant upon his obligation under the terms of the note, for payment of the sum of $5,800 and interest thereon, to be secured by lien on his separate real property. We are convinced the divorce court was authorized to render that judgment, and that the lien is valid.

It has been repeatedly held, and appears to be the established rule in California, that a divorce court, in distributing community properties between the spouses pursuant to section 146 of the Civil Code, may create a valid lien on community properties awarded to the husband to secure proportions thereof or payments of the amounts awarded to the wife. (*Gaston* v. *Gaston,* 114 Cal. 542 [46 P. 609, 55 Am.St.Rep. 786]; *Webster* v. *Webster,* 216 Cal. 485, 488 [14 P.2d 522]; *Scheibe* v. *Scheibe,* 57 Cal.App.2d 336, 343 [134 P.2d 835]; *Meyer* v. *Meyer,* 184 Cal. 687 [195 P. 387]; 27 C.J.S. § 300c, p. 1151.) The last cited cases, however, do not fit the facts of this case, because the liens were there imposed on community properties and not on separate properties.

The cases cited by appellant on the preceding issue are distinguishable from and not in conflict with what we have held in that regard.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 26, 1949. Edmonds, J., Carter, J., and Schauer, J., voted for a hearing.