[Civ. No. 30317. Fourth Dist., Div. Three. Sept. 28, 1984.]

In re the Marriage of JO B. and SAMUEL BLAIR McNEILL III.
JO B. McNEILL, Appellant, v.
SAMUEL BLAIR McNEILL III, Respondent.

554

COUNSEL

James E. Sutherland for Appellant.

Gayle R. Posner, Carter, Monkman & Cooper and Cooper, Monkman, Sanborn & Brown for Respondent.

OPINION

SONENSHINE, J.—Wife appeals from judgments in a consolidated civil action and a proceeding for dissolution of marriage.

Wife represented many material facts to husband during their six-year marriage. She told him she was an attorney, had a master's degree in accounting, and was suffering from cancer. Further she led him to believe there was an outstanding premarital judgment against her which she said could affect their assets. All were lies.

Husband owned a residence before the marriage. Shortly thereafter, title was changed by grant deed from his name alone to "Samuel Blair McNeill III, and Jo B. McNeill, Husband and Wife." Two years later, husband, upon wife's urging and believing she needed complete rest and quiet because of alleged chemotherapy treatments, moved out of the home. The next year wife told husband she had only 90 days to live and encouraged him to execute documents she had prepared transferring their assets to a trust. Husband, relying on wife's legal and tax expertise and allegations of her imminent death, signed all of the documents. In fact, wife had presented husband with a marital settlement agreement transferring almost all of his assets to her and a grant deed to the residence transferring title to her alone.

Husband did not learn the house had been put into wife's name until a year later. He filed suit claiming the house was his separate property but did not immediately serve her. Wife, still very much alive, filed a petition for dissolution, alleging all property, including the residence, had been divided by the property settlement agreement. Husband's response in the dissolution action pleaded the agreement was void and the residence was his separate property. He also amended his civil complaint to include four causes of action. In the first, he asked for cancellation of the deed and to quiet title to the residence. The second cause of action alleged fraud and sought a declaration that the deed and settlement agreement were void. He further requested compensatory and exemplary damages. Husband's third cause of action alleged constructive fraud resulting from wife's breach of her fiduciary duty and again sought cancellation of the deed and marital agreement, plus compensatory and exemplary damages. Husband pleaded rescission of the deed and marital settlement agreement in the fourth cause of action.

The parties stipulated only the second deed and marital settlement agreement were at issue; husband conceded the first transfer was valid. Husband's motion to consolidate his action and the dissolution was granted.[1] The parties also stipulated to an advisory jury which heard the issue of

---

[1]Wife contends the consolidation was granted "with a reservation of the wife's right to object to jurisdiction" but the order does not reflect any reservation. This argument is meaningless in any event as the parties could not stipulate to jurisdiction if it did not exist.

fraud.[2] The court took further evidence on the remaining issues, adopted the jury's findings of damage and fraud, cancelled the marital settlement agreement and deed, and quieted title to the residence in the names of the parties as community property. Husband was awarded $96,000 in compensatory and consequential damages, $32,000 in exemplary damages, and costs. The judgment on reserved issues in the dissolution action included an order to sell the family residence and divide the proceeds. Further, wife was ordered to return designated items of husband's separate property to him, and if not, to reimburse husband for them.

### The Consolidation of the Dissolution and Civil Suit

■ Relying on California Rules of Court, rule 1212 and California public policy motivating the 1970 Family Law Act, wife argues the court erred in consolidating the civil and dissolution actions.

Rule 1212 provides, "Neither party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules or the Family Law Act." ■ The rules are *sui generis* and control both statutory and decisional law. (*In re Marriage of Dover* (1971) 15 Cal.App.3d 675 [93 Cal.Rptr. 384].) ■ Husband's civil action, insofar as it claimed damages, could not have been joined with the dissolution action nor could those causes of action have been pleaded *as part of* the dissolution. Consolidation of the actions was not prohibited, however. "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." (Code Civ. Proc., § 1048.)

Wife argues the no-fault concept of dissolution proceedings, the cornerstone of the 1970 Family Law Act, precludes consolidation and the procedural order in which the cases were heard. ■ There can be no disagreement with this general proposition; the strong public policy of this state is to eliminate fault as a ground for dissolution of marriage and as a consideration in the division of property. This, however, does not prohibit husband and wife from pursuing appropriate civil remedies against one another.

---

[2]The parties stipulated the jury was to act in an advisory capacity on the issues of *fraud* and *damage* (which the trial judge could accept or reject) but the judge would determine the dollar amounts *and* the balance of the issues. They further stipulated all evidence presented to the jury could be considered *wherever* relevant for purposes of the remaining issues in the consolidated matters.

Here husband sought to void the deed and the agreement, asked for damages resulting from wife's fraud, and sought exemplary damages. Neither the existence of the marital relationship nor the fact wife was contemporaneously seeking a dissolution prohibited husband from his requested relief. Husband could have tested the validity of the deed and agreement in the dissolution or by an independent action. (*In re Marriage of Testa* (1983) 149 Cal.App.3d 319 [196 Cal.Rptr. 780].) But damages *could not* have been pleaded in the dissolution action; to be compensated for fraud, husband had to file a separate civil action.

Courts have encouraged consolidation since the enactment of both the Family Law Act and the Family Law Rules of Court. This allows issues which could not be raised in the dissolution action nevertheless to be heard concurrently. In *Porter* v. *Superior Court* (1977) 73 Cal.App.3d 793 [141 Cal.Rptr. 59], wife filed for dissolution and husband then filed an independent action to set aside a deed transferring property from his name alone to himself and his wife as joint tenants. He could not "*prevent* the court from proceeding with the dissolution action insofar as it involves the status of the parties and the wife's claim that the property is *community property.*" (*Id.*, at p. 805, italics added.) The *Porter* court, in discussing possibilities as to how the matter could proceed, stated "the actions could be ordered consolidated . . . ." (*Id.*, at p. 805.) And in *Beehler* v. *Beehler* (1979) 100 Cal.App.3d 376 [161 Cal.Rptr. 30], wife filed a civil complaint against husband and his business partners. The lower court improperly dismissed her suit after sustaining defendants' demurrers. As in *Porter,* the reviewing court suggested consolidation with her dissolution action as an efficient and proper procedure: "[the trial court] could have ordered the actions consolidated thereby providing for resolution of the entire matter in one proceeding." (*Id.*, at p. 384; *In re Marriage of Buford* (1984) 155 Cal.App.3d 74, 79 [202 Cal.Rptr. 20].)[3]

This distinction was also accepted in the case of *In re Marriage of Utigard* (1981) 126 Cal.App.3d 133 [178 Cal.Rptr. 546], where the children sought to be joined in the parties' dissolution action. The court found rule 1212 prohibited their joinder, but allowed their complaint to be consolidated for trial. *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57 [191 Cal.Rptr. 545] is similar. There, a spouse was precluded from joining a *Marvin* claim with the dissolution action,[4] but was encouraged to make the claim in an

---

[3]Cases before the Family Law Act considered consolidation appropriate. (See *Schotte* v. *Schotte* (1962) 203 Cal.App.2d 28 [21 Cal.Rptr. 220] [consolidating wife's dissolution action and husband's independent suit to impose a constructive trust on real property owned by wife] and *Patton* v. *Patton* (1948) 32 Cal.2d 520 [196 P.2d 909] [consolidating husband's divorce action with wife's suit to cancel property settlement agreements].)

[4]*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].

independent action to be consolidated with the dissolution. And in *Watkins v. Watkins* (1983) 143 Cal.App.3d 651 [192 Cal.Rptr. 54], the court consolidated husband's petition for dissolution with wife's separate action for declaratory relief, constructive trust, breach of contract, and fraud.

Wife in this instance alternatively contends the court erred in not staying or dismissing the civil action after the marital settlement agreement was set aside. Were rescission the only relief requested, this claim would have merit. However, the further request for damages, and punitive damages in particular, had to be determined in the civil action as discussed above. We find no error in the order the matters were heard or in their consolidation.

## THE CIVIL SUIT

The court, finding wife perpetrated a fraud upon husband, cancelled and rescinded the second deed and the property settlement agreement, quieted title in husband and wife as community property, and awarded the following damages:[5] 1. Damages based on fraud in the amount of $10,000 for loss of use of the residence and $30,000 for emotional distress; 2. Attorney's fees of $56,000, plus costs; 3. Exemplary damages in the amount of $32,000. We consider each separately.

### *Loss of Use Damages*

Wife contends the court erred in awarding husband damages for loss of use of the residence. The contention is meritless. The complaint prayed for rescission and damages and alleged wife had fraudulently prevailed upon him to move out of his home and caused the property to be placed in her name alone. Loss of use during the time wife was in exclusive possession is a proper recovery. (*Millar v. James* (1967) 254 Cal.App.2d 530 [62 Cal.Rptr. 335].)

---

[5]"1. The Court concludes that defendant Jo B. McNEILL committed fraud upon plaintiff SAMUEL B. McNEILL.

"2. The Court concludes that Jo B. McNEILL committed constructive fraud upon SAMUEL B. McNEILL.

"3. The Court concludes that because of the fraud of Jo B. McNEILL, the deed of July 7, 1975 and the marital settlement agreement of the same date are void and are to be rescinded and cancelled.

"4. The Court concludes that the title to the real property located at 16622 Tiburon Place, Huntington Beach, California, is community property and is quieted in the names of SAMUEL B. McNEILL and Jo B. McNEILL as such.

"5. The Court concludes that SAMUEL B. McNEILL is entitled to compensatory and consequential damages as a result of Jo B. McNEILL's fraud.

"6. The Court also concludes that SAMUEL B. McNEILL is entitled to punitive or exemplary damages as a result of the malice, fraud and oppression by Jo B. McNEILL in her dealings with SAMUEL B. McNEILL."

*Emotional Distress*

██ Wife correctly contends mental distress damages are unavailable under Civil Code section 1692.[6] (*O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 159 [119 Cal.Rptr. 245].) The elderly, senile plaintiff in *O'Neil,* through undue influence, was induced to deed her property to the Spillanes. The jury was erroneously instructed and awarded damages for mental suffering. ██ "[R]egardless of whether damages . . . are being sought under sections 1692 or 3343 [providing the measure of damages for a plaintiff defrauded in the purchase, sale or exchange of property], one conclusion is crystal clear: no damages may be awarded for pain and mental suffering under either section." (*O'Neil* v. *Spillane, supra,* 45 Cal.App.3d 147, 158-159, fns. omitted.) ██ The award to husband for emotional distress, as an element of consequential damages, cannot be upheld.[7]

*Legal Fees*

██ Wife next urges recovery of attorney's fees is improper in the civil action. We again agree. Code of Civil Procedure section 1021 provides, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to costs and disbursements, as hereinafter provided."

There being no agreement between the parties and no specific statutory authorization, husband asks we follow the reasoning of *Walters* v. *Marler* (1978) 83 Cal.App.3d 1 [147 Cal.Rptr. 655], entitling a plaintiff to recover attorney's fees as an element of damages in actions for fraud in which the defendant is a fiduciary. But that portion of *Walters* has been disapproved by our Supreme Court in *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498 [198 Cal.Rptr. 551, 674 P.2d 253]. Those damages must be stricken from the civil judgment.

This does not, however, conclude the matter. Legal fees *may* be awarded in a dissolution action. (§ 4370.) The court specifically stated it "had taken into consideration attorney's fees for plaintiff in the compensatory damage

---

[6]All references are to the Civil Code unless otherwise designated.

[7]We are aware of the line of cases allowing emotional distress damages in certain breach of contract cases. (E.g., *Wynn* v. *Monterey Club* (1980) 111 Cal.App.3d 789 [168 Cal.Rptr. 878].) Liability is predicated upon the contemplation of the parties at the time of contracting. that a breach would result in severe mental distress. But husband did not plead a separate cause of action for fraud, except as an alternative to rescission, or include a separate prayer for damages for the infliction of emotional distress.

award in the civil action. *For that reason,* the court does not award any attorney's fees to plaintiff/respondent in the dissolution action." (Italics added.)

■ Where reversal of a real property award is required in a dissolution action, retrial of the attorney's fees issue may be necessary when predicated on that property award. To avoid prejudice, "[s]ince the attorney's fees order is tied, at least in part, to the division of community property, the judgment on both issues must fall together." (*In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 33 [202 Cal.Rptr. 646].) ■ We find the same reasoning applicable to consolidated actions when a refusal to make a finding in one action is tied to definitive finding in the other. "The trial court's order denying [husband's] request for attorney's fees [in the dissolution] was predicated on its finding that [he received them in the civil action] . . . [and] the judgment on both issues must fall together." (*Ibid.*) Thus, reversal of the attorney's fees award in the civil action requires retrial of the fees request in the dissolution. The court in essence refused to rule on the fees request in the dissolution action. As the dissolution action must be remanded for further adjudication on other matters, husband is entitled to a ruling on this issue.[8]

We therefore remand this issue to the trial court for an appropriate finding in the dissolution action after determination of the reasonableness of the fees and the respective needs and abilities of the parties. (§ 4370, subd. (a); *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988 [106 Cal.Rptr. 78].)

---

[8]Husband has specifically requested fees pursuant to the dissolution action should they be denied in the civil action. Wife relies on *In re Marriage of Gonzales* (1975) 51 Cal.App.3d 340 [124 Cal.Rptr. 278] for the proposition husband's contingency fee arrangement with counsel precludes an award of attorney's fees. The contingency agreement in *Gonzales* related to "whatever is obtained in her behalf *out of the third-party settlement or judgment.*" (*Id.,* at p. 343.) Fees *would* have been appropriate for the dissolution action. The present contingency fee arrangement related to the quiet title action and was to take effect only *if* no fees were awarded.

Further, the court in *Vella* v. *Hudgins* (1984) 151 Cal.App.3d 515 [198 Cal.Rptr. 725] recently stated, "[a]lthough the contingency fee contract was in existence between plaintiff and her attorney, and was in evidence, the court was not bound by it in determining an award of reasonable attorney's fees for successful litigation." (*Id.,* at p. 519.) "Although it is clear that California decisions have thus far managed to avoid, rather than resolve, this issue, the Nebraska court in *Prucka* v. *Papio Natural Resources Dist.* (1980) 206 Neb. 234 [292 N.W.2d 293], did reach it. Under circumstances similar to ours the court concluded: '[T]he court, in awarding a reasonable fee, may . . . consider the fact that the litigant is obligated to pay a contingent fee, particularly if such a contract is customary in the locality. While that factor is neither the sole factor nor a factor to be given any greater weight than any other, it may, nevertheless, be considered. Likewise, the court may consider any other fee agreement entered into by the parties.' (*Id.,* at p. 296.) We agree with the *Prucka* court that the contract is some evidence of the value of an attorney's services, but as with other items of evidence, it is not controlling." (*Id.,* at p. 521.)

*Punitive Damages*

██ The trial court found wife acted with malice, fraud and oppression. Husband thus met the initial requirement for allowance of "damages for the sake of example and by way of punishing the defendant." (§ 3294.) ██ These damages are awardable in a rescission action. (*Millar* v. *James, supra,* 254 Cal.App.2d 530.) ██ However, by reason of striking the emotional distress and attorney's fees awards, is there sufficient actual damage upon which a punitive damage award can be based?

Husband, by rescission of the agreement and deed, had restored to him his interest in the community property, his separate property and $10,000 in damages. ██ "[I]t is immaterial that [husband's] recovery is in the form of specific restitution, rather than monetary damages. [Citations.]" (*Horn* v. *Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871]; *James* v. *Public Finance Corp.* (1975) 47 Cal.App.3d 995 [121 Cal.Rptr. 670].)

██ Further, the advisory jury found husband had suffered damage. The court adopted this finding. "[T]he jurors' finding in this case that [husband] suffered actual damages in some unspecified amount as a result of [wife's] fraudulent acts . . . furnishes ample support for [the] award of punitive damages." (*Werschkull* v. *United California Bank* (1978) 85 Cal.App.3d 981, 1004 [149 Cal.Rptr. 829].) The court did not err in its award of punitive damages.

THE DISSOLUTION ACTION

*Residence*

Initially, we note trial in this matter was held prior to the enactment of section 4800.2, effective January 1, 1984. That section provides, "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property."

■ The question of the applicability of section 4800.2 arose at oral argument. We find it to be relevant for two reasons. First, it applies to this property division; this appeal was pending on the statute's operative date. (*In re Marriage of Neal* (1984) 153 Cal.App.3d 117 [200 Cal.Rptr. 341]; *In re Marriage of Martinez, supra,* 156 Cal.App.3d 20.) Second, the language is mandatory: it requires reimbursement for separate property contributions to the acquisition of community property absent a written waiver.

■ Husband acquired the home as his separate property in 1967. Immediately following the marriage in 1972, the property was transferred by grant deed to the parties as husband and wife, raising a presumption of community property. (§ 5110.) Thus, without a written waiver, "[i]n the division of community property . . . [he] shall be reimbursed for his . . . contributions to the acquisition of the property . . . ." (§ 4800.2.) ■ Before trial, the parties stipulated "that the deed which plaintiff alleges, by the amended and supplemental complaint, was fraudulently procured by defendant and which plaintiff seeks to cancel is the deed dated July 7, 1975 . . . ." We do not find this to be a waiver of any separate interest traceable to the community's acquisition of the property by the 1972 deed. Rather it represents an agreement not to litigate any issue of fraud in the inducement of the 1972 transfer.

■ The residence itself is his reimbursable separate property contribution, namely his equity in the home at the time of transfer to husband and wife. No tracing is necessary in this instance, merely evaluation of his equity on December 1, 1972.

This determination—*not* to presume a gift of his separate property interest to the community in 1972[9]—comports with the legislature's intent, as is apparent from the following comment: "Section 4800.2 overrules the case of *In re Marriage of Lucas,* 27 Cal.3d 808 [citations omitted] (1980) (and cases following it), which precluded recognition of the separate property contribution of one of the parties to the acquisition of community property, unless the party should show an agreement between the spouses to the effect that the contribution was not intended to be a gift. Under section 4800.2, a party making a separate property contribution to the acquisition of the property is not presumed to have made a gift, unless it is shown that the parties agreed it was a gift, but is entitled to reimbursement for the separate property contribution at dissolution of marriage. The separate property contribution is measured by the value of the contribution at the time the contri-

---

[9]We also note, although unnecessary to its decision, the court in the case of *In re Marriage of Neal, supra,* 153 Cal.App.3d 117 stated an asset, if designated as community property, would be considered community property but wife would be entitled to reimbursement for traceable separate property contributions.

bution is made. . . ." (17 Cal. Law Revision Com. Rep. (1984) pp. 864–865 (1984); 3 Sen. J. (1983 Reg. Sess.) p. 4866.)

On remand, the value of the equity in the residence at the time husband changed title to community property, less any community contribution after marriage and before the transfer date,[10] must be determined and reimbursed to him as his separate property contribution, absent a *written* agreement to the contrary. (*In re Marriage of Anderson* (1984) 154 Cal.App.3d 572 [201 Cal.Rptr. 498].)

Wife, relying on section 4800.2, contends she is entitled to reimbursement for her postseparation payments which reduced the loan on the residence. She also claims the court erred in failing to apportion postseparation appreciation and capital improvements, apparently wishing the home valued as of date of separation to allow her the sole advantage of its increased equity. The court found wife's postseparation payments were less than the value of her use of the residence for seven years and did not allow her credits or offsets for them.[11] We determine she is entitled neither to reimbursement for those payments nor to sole realization of the increased equity. Her mortgage payments were offset by husband's contribution for that purpose; she failed to prove any alleged "improvements" increased the value of the home; and her reasonable rental value for seven years, even deducting husband's $10,000 civil award, far exceeded her expenditures for taxes, insurance, encumbrances and maintenance. Further, any entitlement to postseparation appreciation is inapplicable in this situation.

Her statement of expenditures recites she had paid approximately $10,500 on principal. The court found husband had paid $9,000 to wife during this period and stated during discussion on the findings and conclusions the $9,000 was given for house payments, thus refusing to adopt a finding she alone had reduced the loan.

---

[10]In this instance it appears the conversion to community property occurred immediately after marriage with no change in fair market value from date of marriage to date of conversion. Community interest in equity value under other circumstances would require utilizing the formula of *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426 [181 Cal.Rptr. 910]. (*In re Marriage of Neal, supra,* 153 Cal.App.3d 117, 124, fn. 11.)

[11]"19. The Court finds that the value of the loss of use and occupancy of the premises for seven (7) years (after deducting the $10,000.00 awarded to plaintiff for damages) when added to the $9,000.00 paid by plaintiff to defendant exceeds the total of all payments made by defendant for actual improvements to the premises, payments made for taxes, payments made for insurance, payments made for maintenance and for payments made on the encumbrances against the real property. The Court therefore finds that neither plaintiff nor defendant are entitled to any credits or offsets (with the exception of the $10,000.00 in loss of use damages suffered by plaintiff) for any of these items as the court finds that the total of the credits and offsets to each party on the above described items are substantially equivalent."

We agree with the trial court. Her postseparation payments were far exceeded by the value of her use and occupancy for seven years. She can hardly be heard to complain that she was also given credit for the $10,000 granted husband in the civil suit.

Wife also claimed approximately $49,000 had been expended in "improvements," however, she could produce no adequate records. The majority of the work appears to have been maintenance or questionable additions for which no building permits were obtained and which were apparently built in violation of local CC&R's—as evidenced by a temporary restraining order previously obtained against wife by the Homeowner's Association. The appraiser assigned no value to the alleged improvements. On the contrary, he considered reducing the value of the house to reflect the cost of their demolition. While money was apparently expended, there was thus no corresponding increase in market value. The court specifically found "there were no substantial improvements made to the house by defendant; that there was no credible evidence produced by defendants as to any substantial improvements made by her." Wife was entitled neither to reimbursement from the community nor offset against husband's loss of use.

Evidence was adduced at trial, uncontradicted by wife, showing the residence's rental value for the seven years wife, her children and boyfriend were in sole possession to be $70,000 to $80,000. Her remaining payments on the residence—taxes, insurance, interest and maintenance—are less than one-half this amount.

 Following separation, and until date of trial, the property is deemed community property and her expenditures on the property were made pursuant to a community debt of the parties. Not considered gifts to the community (*In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165]), her " 'earnings or other separate funds [used] to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.' " (*Id.*, at p. 84, quoting from *In re Marriage of Smith* (1978) 79 Cal.App.3d 725 [145 Cal.Rptr. 205].) Reimbursement, however, is not to be ordered automatically as where " 'payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.' " (*Id.*, at p. 85.) This is particularly appropriate where husband is unaware of wife's fraud and continuously expected to return to the home when wife "recovered" from her illness. He had no reason to suspect his payments to her were *not* preserving their community property. And from the point when he discovered the fraud, he had *no* control over the residence until such time as the court rescinded the deed. She is not being asked to reimburse husband or the community for

the remainder.[12] Rather, she has been given credit for the $10,000 granted husband in the civil suit and is no longer liable for this amount.[13]

■ We likewise reject wife's suggestion the residence be evaluated, for purposes of division, as of the time of separation. An alternate valuation date is used only "for good cause shown" (§ 4800), as when the hard work and actions of one spouse *alone* cause the increase, not, as here, "when an asset increases in value from nonpersonal factors such as inflation . . . ." (*In re Marriage of Priddis* (1982) 132 Cal.App.3d 349, 355 [183 Cal.Rptr. 37].) And the apportionment formulas of *In re Marriage of Marsden, supra,* 130 Cal.App.3d 426 and *In re Marriage of Moore* (1980) 28 Cal.3d 366 [168 Cal.Rptr. 662, 618 P.2d 208] suggested by wife are inappropriate to the instant action. *Marsden* and *Moore* both deal with preseparation appreciation of separate property where community funds further reduce the principal while *both* parties have the use and enjoyment of the property. When the parties have separated, only the in-spouse benefits from use of the community residence.

The reimbursement issue is remanded to the trial court for a determination of the amount due husband pursuant to section 4800.2. Husband must be reimbursed for the equity in the home in 1972 at the time he first deeded it to the community.

### Husband's Separate Property

■ ■ The final issues we address are confirmation to husband of his separate property furniture and furnishings and the court's order to return those assets or to deduct a cash equivalent from wife's share of the community property.[14] The court has jurisdiction to characterize property

---

[12]The present scenario lends itself to the proposition, for which there is virtually no authority, that a *nonpossessory* spouse is entitled to reimbursement when the in-spouse pays less on account of a debt for the preservation of the residence than the value of its use. However, we note the comment concerning *Epstein* in California Family Law Report, Volume III, Number 10, May 7, 1979, at page 1092: ". . . the prevailing philosophy seems to be that the in-spouse should *not* be reimbursed, because he or she is receiving rental value from the community. (See Walzer, *California Marital Termination Settlements,* [Cont.Ed.Bar 1971] p. 234.) Indeed, if the in-spouse's payments are *less* than the fair rental value of the property, the *out-spouse* might be entitled to reimbursement or a reduction in child or spousal support. (See Judge King's [Donald B.] *Guidelines for Domestic Relations Cases,* [1977] pp. 9-10.)"

[13]The court's determination of husband's damages for loss of use in the civil action need not be based on the considerations applicable under the Family Law Act. (*Brink* v. *Brink* (1984) 155 Cal.App.3d 218 [202 Cal.Rptr. 57].)

[14]We understand the court's concern in this instance. It noted wife's credibility was "about this thin" and felt strongly "that this lady is going to take advantage of every opportunity to deprive the plaintiff of his property and avoid any kind of judgment she will ever face. . . ."

as separate or community and may confirm separate property to a particular spouse. We find under the facts of this case the court may further impress a lien against the community proceeds of a possessory spouse who refuses to return separate property confirmed to the other spouse.[15]

In response to wife's dissolution petition, husband checked wife's property statement "incorrect" and stated, "Any purported *property settlement agreement* is void." (Italics added.) The disputed furniture and furnishings were a part of the agreement. Once rescission was granted in the civil action, the court in the dissolution action found the items to be husband's separate property. ▮ "The trial court certainly has jurisdiction to determine whether a particular asset is community or separate property." (*In re Marriage of Buford, supra,* 155 Cal.App.3d 74, 78.) ▮ After the furniture and furnishings were characterized as husband's separate property the court properly confirmed them to him, quieting title in his name. (*Huber v. Huber* (1946) 27 Cal.2d 784 [167 P.2d 708]; *Porter v. Superior Court, supra,* 73 Cal.App.3d 793.)[16]

▮ One issue remains. What further action may be taken by a court to enforce an order confirming a spouse's separate property? We are cognizant of the longstanding rule a dissolution court lacks jurisdiction to dispose of a spouse's separate property. (*Porter v. Superior Court, supra,* 73 Cal.App.3d 793.) In *Beehler v. Beehler, supra,* 100 Cal.App.3d 376, wife, while a dissolution action was pending, filed a complaint against husband and his partners alleging a separate property interest. The matters were not consolidated. The court held the separate property claim must be adjudicated in the dissolution action where the court may "*merely* confirm the property to plaintiff." (*Id.,* at p. 383.) It could not *enforce* those rights absent joinder of all parties and issues.

*In re Marriage of Buford, supra,* 155 Cal.App.3d 74 involved confirmation of a residence to wife as her separate property. Husband sought imposition of a constructive trust for his interest in the residence. On appeal the court held, "the court [below] lacked jurisdiction to impose a constructive trust on her separate property. The dissolution proceeding below was instituted under the Family Law Act (Civ. Code, § 4000 et seq.). The act

---

[15]As the actions were consolidated, the court could have ordered return to husband in the civil action, providing jurisdiction for "an alternative judgment, the amount of which is based upon the value of the property which defendant is required to restore." (*McDevitt v. Butte City Ranch* (1935) 7 Cal.App.2d 252, 254 [46 P.2d 290].)

[16]We note the crystal chandeliers were confirmed to wife as her separate property, although she made no claim for them in her petition.

limits the court's jurisdiction in such proceedings to dividing the community and quasi-community property of the parties." (*Id.*, at p. 78, fn. omitted.)

A recent case addressed the dissolution court's jurisdiction to determine the *character* of an asset. Once the court characterized the property as true joint tenancy, husband had to bring a separate partition action. However, it then could be consolidated with the dissolution action. (*In re Marriage of Leversee* (1984) 156 Cal.App.3d 891 [203 Cal.Rptr. 481].)

In all three instances, however, the courts were faced with a single action. Here we deal with consolidated actions, the very remedy suggested by the courts as the proper method for avoiding piecemeal litigation and granting complete relief to the parties. *Beehler, Buford* and *Leversee,* while declining to enforce an interspousal claim regarding separate property, recognized jurisdiction *would* arise if the cases had been consolidated. Although the dissolution court could not "enforce [Beehler's separate property rights] in the absence of proper joinder" (*Beehler* v. *Beehler, supra,* 100 Cal.App.3d 376, 383), "the actions [could be] consolidated thereby providing for *resolution of the entire matter in one proceeding.*" (*Id.,* at p. 384, italics added.) Similarly, the *Buford* court concluded "husband's claim to a constructive trust on wife's separate property must be brought in a civil action independent of the dissolution proceeding. However, once his independent action is filed, he may move to consolidate it with the dissolution action." (*In re Marriage of Buford, supra,* 155 Cal.App.3d 74, 79.)

Husband in this instance did file an independent action and it was consolidated with the dissolution. Resolution of the entire matter requires the court now be allowed to enforce husband's interspousal awards by imposing a lien against wife's share of the proceeds from sale of the community property residence.[17]

Our determination is further buttressed by the requirement wife's liability to husband for her wrongful acts must be charged against her separate property. (§ 5113, subd. (a).) *In re Marriage of Stitt* (1983) 147 Cal.App.3d 579 [195 Cal.Rptr. 172] addressed attorney's fees incurred during marriage, which were deducted from wife's share of the community property. The fees were related to her defense against embezzlement charges by her employer. Husband did not participate in the embezzlement and no benefit resulted to the community. "[I]n the settlement of marital rights the court could seek an equitable result because of the separate nature of the obliga-

---

[17]Wife argues the court improperly valued the furniture at husband's cost rather than market value. However, no objection was made to the evidence and no testimony was introduced in rebuttal. Moreover, evaluation in an equitable proceeding need not be identical to that required under the Family Law Act. (*Brink* v. *Brink, supra,* 155 Cal.App.3d 218.)

tion. In this instance the court found it appropriate to assign the full financial responsibility for the wife's embezzlement to the wife . . . . This was consistent with the general principle found in section 1714 [Civ. Code] that the actor is solely responsible for wilful and negligent acts unless shared, mitigated or excused because of other principles of law." (*Id.*, at p. 588.)

Even prior to enactment of the Family Law Act, courts fashioned remedies to enforce their orders. Discussing a lien imposed on a husband's separate property to secure payment to wife, the court in *Jackson* v. *Jackson* (1949) 93 Cal.App.2d 101 [208 P.2d 997] emphasized it did not secure *"her allotted share of the community property."* (*Id.*, at p. 108.) Nor in this case does the court's order to return husband's *separate* property or pay its value place any burden on her. She need only return the property as ordered. In the event she does not, she owes a *separate* obligation, "distinct from the preceding division of community properties. It is merely a separate equitable adjustment of the obligations of the spouses . . . ." (*Ibid.*) We find no error in the conditional order to return the property or be charged for its equivalent, as the court may fashion an order to effect its decree. (§ 4380.) "A special benefit of a system which allows for equitable considerations, especially in the family law field, is to afford the judge before whom the litigants appear, subject to applicable legal principles, the opportunity to fashion a remedy which achieves a just result. While critics may claim this results in inconsistency, we believe the strength of the judicial system is enhanced when the judiciary possesses the ability in family law cases to tailor a remedy to fit the circumstances of the individual litigants before the court." (*In re Marriage of Hug* (1984) 154 Cal.App.3d 780, 794 [201 Cal.Rptr. 676].)

The exemplary damages awarded in the civil suit may also be deducted from wife's share of the community property pursuant to the consolidation as well as *In re Marriage of Stitt, supra,* 147 Cal.App.3d 579 and sections 5113, 5122 and 5126.

DISPOSITION

The mental distress damages and attorney's fee award must be stricken from the judgment in the civil action. Damages for loss of use of the residence and exemplary damages and costs are affirmed.

The dissolution action is remanded to the trial court for a determination of the amount of attorney's fees, if any, to be awarded to husband. The court is to determine the reimbursement due husband for his contribution to the community's acquisition of the residence. The damage amounts stricken

from the civil judgment are to be removed from the lien against wife's share of the proceeds from sale of the residence.

The judgment is affirmed as to all remaining issues. Each party shall bear his or her own costs on appeal.

Crosby, J., concurred.

**WALLIN, Acting P. J.**—I concur in the result. The trial court's decision to consolidate the civil action with the dissolution petition is troubling because the former included requests for mental distress and punitive damages. These claims inevitably must be supported by testimony inimical to the no fault concept of the Family Law Act. Since the majority has stricken the mental distress damages and correctly concluded the punitive damages awarded are reasonable, consolidation in this case caused no harm.

In general, however, consolidation of a civil action and a dissolution petition should only be allowed when claims other than intentional torts are at issue. *Marvin* claims, contract disputes or disagreements concerning the characterization of property can properly be addressed in a consolidated proceeding because they do not raise questions of fault or involve emotional fingerpointing.

A petition for a rehearing was denied October 16, 1984, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1984.